ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF FLORENCE** | ) | **TWELFTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH CAROLINA, | ) | C.A. No.: 2024-CP-21-_____ |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURLINGTON INDUSTRIES, INC., | ) | **SUMMONS** |
| | ) | (JURY TRIAL DEMANDED) |
| *Defendant*. | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to the Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

November 20, 2024

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF FLORENCE** | ) | **TWELFTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH | ) | C.A. No.: 2024-CP-21-_____ |
| CAROLINA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURLINGTON INDUSTRIES, INC., | ) | **COMPLAINT** |
| | ) | (JURY TRIAL DEMANDED) |
| *Defendant.* | ) | |
| | ) | |

Plaintiff, CITY OF FLORENCE, SOUTH CAROLINA, by and through the undersigned counsel, brings this action against the above-named Defendant for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff, City of Florence, South Carolina, brings this action to address Defendant's ongoing contamination of the Great Pee Dee River and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2. As Plaintiff has recently discovered, Defendant has discharged and continue to discharge products that contain or degrade to these PFAS to the Great Pee Dee River, which travel downstream to Plaintiff's water intake, thereby contaminating Plaintiff's properties and the domestic water supply for over 34,000 water customers in Florence County. Plaintiff seeks a

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendant's repeated and ongoing PFAS contamination.

3.      Plaintiff provides potable water to Florence County residents. It owns and occupies two properties at issue in Florence County. At 2598 Florence Harllee Blvd., Florence, South Carolina 29506, Plaintiff operates the Pee Dee Regional Water Treatment Plant (a surface water treatment plant, or "SWTP") and related buildings, improvements, and equipment that make up its water distribution system. Plaintiff's other property abuts the Great Pee Dee River, where its water intake withdraws water for treatment at the SWTP before distribution to customers.

4.      Defendant owned and/or operated an industrial facility upstream of Plaintiff's water intake and used products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in its industrial processes. Defendant then discharged wastewater contaminated with these products to surface waters in the Great Pee Dee River upstream of Plaintiff's water intake.

5.      Industrial wastewater from Defendant's facility contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes, are discharged to the Great Pee Dee River, and flow downstream to Plaintiff's SWTP. As a direct and proximate result of Defendant's actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's properties have been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.      Defendant's PFAS contaminate Plaintiff's water source at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and Plaintiff's existing water treatment processes cannot remove them. Instead,

2

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Plaintiff requires new water treatment technologies to remove, and provide water free from, Defendant's PFAS.

7.    As a result of Defendant's intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendant to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP that will remove Defendant's PFAS from drinking water. In addition, based on the Defendant's intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## **DISCLAIMER**

8.    Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, Mil-Spec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by Defendant or any third-party.

9.    Plaintiff brings no cause of action against, and seeks no relief from, any Defendant under federal law or statute.

## **JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina and sections 5-7-30 and 14-1-80 of the South Carolina Code.

11.    This Court has personal jurisdiction over Defendant, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

3

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

12.     Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Florence County, and the most substantial part of Defendant's alleged acts or omissions giving rise to Plaintiff's claims occurred in Florence County.

## PARTIES

### I.     Plaintiff

13.     Plaintiff is a municipal corporation organized and existing under the laws of South Carolina. S.C. CODE ANN. §§ 5-7-10, *et seq.*; 5-31-610. Through its Department of Public Works, Plaintiff provides potable water services to its customers.

14.     Plaintiff owns two properties at issue. The first is located at 2598 Florence Harllee Boulevard, Florence, South Carolina 29506, where Plaintiff operates the Pee Dee Regional SWTP. Approximately three miles to the northeast, Plaintiff owns land riparian to the Great Pee Dee River, where it operates a surface water intake.

15.     The Pee Dee Regional SWTP provides potable water to approximately 34,000 customers.

### II.     Defendant

16.     Defendant **Burlington Industries, Inc. ("Burlington")** was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina

4

29593. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River. Over the course of the facility's operations, Burlington used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Plaintiff's water intake. Wastewater lagoons and other storage basins at the facility have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS transport to the Great Pee Dee River upstream Plaintiff's water intake.  Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source. Defendant also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Great Pee Dee River watershed upstream of Plaintiff's water intake. PFAS from Defendant's biosolids have accumulated in the Great Pee Dee River watershed, enter surface waters, continually flow downstream to Plaintiff's water intake, and contaminate Plaintiff's properties and its water source.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.     Background and Hazards of PFAS**

17.     PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

18.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are

5

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

19.    There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendant.

20.    There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

21.    Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

22.    PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

23.     While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

24.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

25.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors. Terminal short-chain PFAS include PFBS and GenX Chemicals.

26.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., *Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)* (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems." *Id.*

27.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

28.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

29.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

30.     Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

31.     In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

32.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either

9

chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

33.    Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

34.    EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

35.    EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., *Final PFAS Nat'l Drinking Water Regulation Landing Page*, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

36.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

37.     EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs. Plaintiff has conducted a diligent investigation into this issue, is seeking to address it in an expedited manner, and for this reason seeks prompt relief from the Court.

## II.     Contamination of the Great Pee Dee River with PFAS

38.     Plaintiff's water intake rests on the Great Pee Dee River in Florence, South Carolina, which draws water from the river for treatment at the Pee Dee Regional SWTP before distribution to customers.

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

39.     Defendant's industrial facility operated along the Great Pee Dee River or one of its tributaries upstream of Plaintiff's water intake.

40.     PFAS sampling of the Great Pee Dee River upstream of Plaintiff's water intake confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout the river. These PFAS flow downstream and contaminate the water at Plaintiff's water intake at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling at Plaintiff's water intake confirms the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption.

41.     Defendant was an owner and operator of a manufacturing plant upstream of Plaintiff's water intake. In its industrial processes, Defendant utilized products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendant's industrial processes generated industrial wastewater containing these PFAS, which Defendant ultimately discharged to surface waters upstream of Plaintiff's water intake.

42.     Defendant's PFAS and their precursors flow downstream to Plaintiff's water intake, damaging Plaintiff's property and contaminating its water source.

43.     The Pee Dee Regional SWTP utilizes conventional water treatment technologies to treat raw water, none of which remove PFAS. Instead, the Pee Dee Regional SWTP requires new water treatment technologies to do so.

44.     Defendant knew or should have known that its conventional water treatment technologies could not remove PFAS from wastewater. Defendant also knew or should have known that its treated wastewater contaminated surface waters and the water Plaintiff draws for its customers.

12

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**III.    Defendant has harmed Plaintiff and Plaintiff's community.**

45.    For decades and unknown to Plaintiff, Defendant discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Great Pee Dee River, which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its properties and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

46.    Defendant's conduct has proximately caused the contamination of the Greet Pee Dee River; and of Plaintiff's land, its SWTP, and its water distribution system with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

47.    Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties, its right to use the Great Pee Dee River, and has caused Plaintiff additional past, present, and future injury to property.

48.    Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendant, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Great Pee Dee River, which it knew or should have known contaminated Plaintiff's properties.

<u>**FIRST CAUSE OF ACTION**</u>

**Private Nuisance**

49.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

50.    Plaintiff is a municipal corporation engaged in constructing, operating, maintaining, improving, and extending a water distribution system for residents of Florence

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

County. It uses its properties for those purposes, including the withdrawal of raw water from the Great Pee Dee River, the treatment of raw water, and the distribution of treated water to customers in Florence County.

51.     Plaintiff owns riparian land abutting the Great Pee Dee River, and Plaintiff has a property right in the reasonable use of these waters, including for the provision of water to its customers.

52.     Through the conduct described herein, Defendant created, contributed to, and/or maintained a nuisance; that is, the contamination of the Great Pee Dee River, with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors at concentrations exceeding those EPA deems unsafe for consumption.

53.     Due to Defendant's contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water treatment technology.

54.     Defendant's contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its riparian rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

55.     Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

56.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendant's contamination

of the Great Pee Dee River and Plaintiff's property, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

57.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendant.

58.     The ongoing contamination of the Great Pee Dee River and Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendant to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of the Great Pee Dee River to supply potable water to its customers.

59.     Defendant's interference with Plaintiff's use of its properties can be abated by funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

60.     Defendant is liable to Plaintiff for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Public Nuisance

61.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

62.     Plaintiff is a municipal corporation engaged in constructing, operating, maintaining, improving, and extending a water distribution system for residents of Florence County. It uses its properties for those purposes, including the withdrawal of raw water from the Great Pee Dee River, the treatment of raw water, and the distribution of treated water to customers in Florence County.

15

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

63.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

64.     Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendant's PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendant's contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

65.     Plaintiff has sustained special injuries as a result of Defendant's public nuisance, including but not limited to, the lost use of its properties; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendant's contamination; interference with Plaintiff's riparian right to use the Great Pee Dee River; interference with the use of Plaintiff's SWTP and water distribution system; and lost revenue.

66.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendant's contamination of the Great Pee Dee River and Plaintiff's properties.

67.     Defendant, individually and acting through its employees and agents, knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

16

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

68.     As a result of the nuisance caused by Defendant, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

69.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendant.

70.     Defendant's ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendant to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

71.     Defendant's contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by requiring Defendant to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

72.     Defendant is liable to Plaintiff for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trespass

73.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

74.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution systems.

17

75.     Defendant intentionally discharged and continues to discharge PFAS to the Great Pee Dee River, notwithstanding that it knew and/or reasonably should have known that:

(a)     Plaintiff draws water from the Great Pee Dee River for the provision of drinking water to its customers;

(b)     water Plaintiff draws from the Great Pee Dee River is contaminated with the PFAS it discharges to the River; and, thereby,

(c)     water contaminated with high concentrations of Defendant's PFAS invades Plaintiff's properties.

76.     Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and beyond what EPA deems unsafe for consumption.

77.     Defendant's invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

78.     Defendant's conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution systems. The damage to Plaintiff's properties is the direct and proximate result of Defendant's intentional conduct.

79.     As a direct, proximate, and foreseeable result of Defendant's trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendant's PFAS, and other damages to be proved at trial.

18

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

80. Defendant's ongoing trespasses can be abated by requiring Defendant to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

81. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

82. Defendant has a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTP, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

83. Defendant knew or should have known that the PFAS it discharged were environmentally persistent, bioaccumulative, and dose-additive; that conventional wastewater treatment technologies could not remove its PFAS; and that surface waters—including the Great Pee Dee River—were vulnerable to the contamination that has taken and now takes place.

84. Defendant nonetheless negligently, recklessly, wantonly, and/or willfully breached its duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape its premises and contaminate the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's properties.

85. Additionally, Defendant had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

19

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

86.     By continually suppling biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Defendant negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

87.     Because Defendant created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the Great Pee Dee River. Defendant also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

88.     Defendant negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

89.     As a direct, proximate, and foreseeable result of Defendant's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value; the cost of removing Defendant's PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; future costs of acquiring, installing, and operating adequate water treatment technologies; and other damages to be proved at trial.

90.     Defendant is liable to Plaintiff for all damages resulting from its conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

20

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**FIFTH CAUSE OF ACTION**

**Strict Products Liability – Ultrahazardous Activity**

91.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

92.     PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

93.     Defendant manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water source and Plaintiff's properties.

94.     Defendant knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Defendant knew that there was no safe dose of PFOA or PFOS.

95.     Defendant knew or expected that these hazardous PFAS chemicals that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water source and Plaintiff's properties while in essentially the same condition as when they left Defendant's hands.

96.     Defendant manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

97.     Defendant and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Defendant received financial benefits from their sales and distribution.

98.     As a direct and proximate result of Defendant's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have damaged Plaintiff's

21

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

99.     As a direct, proximate, and foreseeable result of Defendant's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

## SIXTH CAUSE OF ACTION

### Strict Products Liability – Design Defect

100.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

101.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

102.    Defendant knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

103.    Defendant's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water source and Plaintiff's properties.

104.    Defendant's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

105.    Defendant knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water source and Plaintiff's properties.

106.    Defendant's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

22

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

(a)    PFAS resist environmental degradation;

(b)    PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

(c)    Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

(d)    PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e)    Defendant failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f)    There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Defendant could have employed.

107.    Defendant's products containing or degrading to these PFAS chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

108.    The foreseeable risk of harm to public health and property posed by Defendant's products containing these PFAS outweighed and outweigh the cost to Defendant of reducing or eliminating those risks.

109.    A reasonable product manufacturer knew or should have known of the significant dangers posed by Defendant's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

110.    As a direct and proximate result of the sale and application of Defendant's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Defendant's PFAS.

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

111.  As a direct, proximate, and foreseeable result of the sale and application of Defendant's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

## SEVENTH CAUSE OF ACTION

### Strict Products Liability – Failure to Warn

112.  Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

113.  Defendant manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

114.  Defendant's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and Defendant knew that agricultural users purchased and used its products without inspection for defects.

115.  Defendant knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, and thereby entering and contaminating Plaintiff's water source and Plaintiff's properties.

116.  Defendant knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Defendant's biosolid products unreasonably dangerous.

24

117.     Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Defendant failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

118.     Defendant failed to describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of such products. As a result of these failures, Defendant's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

119.     As a direct and proximate result of Defendant's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors have damaged Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

120.     As a direct, proximate, and foreseeable result of Defendant's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

### EIGHTH CAUSE OF ACTION

**Breach of Implied Warranties**

121.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

122.     Defendant manufactured, sold, and distributed its biosolid products to be used in the agricultural context.

25

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

123.    Defendant's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Defendant knew or had reason to know that such biosolids were not fit for the known and particular uses on agricultural lands.

124.    Defendant knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Great Pee Dee River, causing Defendant's PFAS to infiltrate these surface waters.

125.    Defendant knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Defendant knew that there is no safe dose of PFOA or PFOS.

126.    Defendant breached applicable implied warranties, and as a result, caused the contamination of Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Defendant's PFAS.

127.    As a direct, proximate, and foreseeable result of Defendant's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendant's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Defendant's breaches of implied warranties.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a)    Enter a judgment and decree against Defendant requiring it to abate the nuisance it has caused, created, and maintained;

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

(b)     Enter a judgment and decree against Defendant requiring it to abate its trespasses onto Plaintiff's properties;

(c)     Enter a judgment and decree against Defendant requiring it to remove its PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water systems by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(d)     Enter a judgment against Defendant for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendant, and all costs; and

(e)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

November 20, 2024

# EXHIBIT

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Nov 20 9:30 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| **COUNTY OF FLORENCE** | ) TWELFTH JUDICIAL CIRCUIT |
| | ) |
| | ) |
| CITY OF FLORENCE, SOUTH | ) C.A. No.: 2024-CP-21-_____ |
| CAROLINA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| BURLINGTON INDUSTRIES, INC., | ) |
| | ) |
| *Defendant.* | ) |
| _____ | ) |

## BURLINGTON INDUSTRIES, INC. CONSENT TO SUIT

1.  I am the court-appointed receiver for Burlington Industries, Inc. ("Burlington"), by order of the Richland County Court of Common Pleas. *See* Order Appointing Receiver Over Defendant Burlington Industries, Inc., *Mimms v. Burlington Indus., Inc.*, C.A. No. 2021-CP-40-05873 (May 13, 2022).

2.  I have received an unfiled copy of a complaint by the City of Florence, South Carolina ("the City") to be filed against Burlington Industries, Inc. in the Florence County Court of Common Pleas concerning contamination of the Great Pee Dee River and the City's properties with certain per- and polyfluoroalkyl substances.

3.  By the order appointing me as receiver, Burlington may not be sued outside of the Richland County Court of Common Pleas without my prior consent. I hereby consent to the City filing and maintaining this suit against Burlington in Florence County.

_____
Peter McCoy, Jr.
Receiver for Burlington Industries, Inc.

ELECTRONICALLY FILED - 2024 Dec 04 10:31 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF FLORENCE | ) | TWELFTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH CAROLINA, | ) | C.A. No.: 2024-CP-21-02844 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ACCEPTANCE OF SERVICE |
| v. | ) | ON BEHALF OF |
| | ) | BURLINGTON INDUSTRIES, INC. |
| BURLINGTON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Summons and Complaint in the above captioned matter on behalf of Defendant Burlington Industries, Inc., effective this 3rd day of ~~November~~ December, 2024.

_____
Peter M. McCoy, Jr.
McCoy Law Group, LLC
15 Prioleau Street
Charleston, SC 29401
peter@mccoylawgrp.com

*Receiver for Burlington Industries, Inc.*

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF FLORENCE** | ) | **TWELFTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH CAROLINA, | ) | C.A. No.: 2024-CP-21-02844 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; AMERICHEM, INC.; AURIA ALBEMARLE, LLC; AURIA SOLUTIONS USA, INC.; BFI WASTE SYSTEMS OF NORTH AMERICA, LLC; BURLINGTON INDUSTRIES, INC.; CARVANA, LLC; CASCADES HOLDING US, INC.; CHEM-TEX LABORATORIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; HEIQ CHEMTEX, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MARCAL CORDOVA LLC; MOHAWK INDUSTRIES, INC.; REPUBLIC SERVICES, INC.; WASTE CONNECTIONS, INC.; and WASTE CONNECTIONS OF NORTH CAROLINA, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **AMENDED SUMMONS** (JURY TRIAL DEMANDED) |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the First Amended Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to the First Amended Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you

fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 12, 2024

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF FLORENCE** | ) | **TWELFTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH CAROLINA, | ) | C.A. No.: 2024-CP-21-02844 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALADDIN MANUFACTURING CORPORATION; AMERICHEM, INC.; AURIA ALBEMARLE, LLC; AURIA SOLUTIONS USA, INC.; BFI WASTE SYSTEMS OF NORTH AMERICA, LLC; BURLINGTON INDUSTRIES, INC.; CARVANA, LLC; CASCADES HOLDING US, INC.; CHEM-TEX LABORATORIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; HEIQ CHEMTEX, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MARCAL CORDOVA LLC; MOHAWK INDUSTRIES, INC.; REPUBLIC SERVICES, INC.; WASTE CONNECTIONS, INC.; and WASTE CONNECTIONS OF NORTH CAROLINA, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FIRST AMENDED COMPLAINT** (JURY TRIAL DEMANDED) |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

Plaintiff, CITY OF FLORENCE, SOUTH CAROLINA, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1.      Plaintiff, City of Florence, South Carolina, brings this action to address Defendants' ongoing contamination of the Great Pee Dee River and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2.      As Plaintiff has recently discovered, Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the Great Pee Dee River, which travel downstream to Plaintiff's water intake, thereby contaminating Plaintiff's properties and the domestic water supply for over 34,000 water customers in Florence County. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.      Plaintiff provides potable water to Florence County residents. It owns and occupies two properties at issue in Florence County. At 2598 Florence Harllee Blvd., Florence, South Carolina 29506, Plaintiff operates the Pee Dee Regional Water Treatment Plant (a surface water treatment plant, or "SWTP") and related buildings, improvements, and equipment that make up its water distribution system. Plaintiff's other property abuts the Great Pee Dee River, where its water intake withdraws water for treatment at the SWTP before distribution to customers.

4.      Defendants own and/or operate industrial facilities upstream of Plaintiff's water intake and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants then discharge wastewater contaminated with these products to surface waters in the Great Pee Dee River upstream of Plaintiff's water intake. Some Defendants directly discharge PFAS-

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

contaminated wastewater, while others do so indirectly via certain wastewater treatment plants ("WWTPs"). These WWTPs include the Anson County Regional WWTP in Wadesboro, North Carolina; the Long Creek WWTP in Albemarle, North Carolina; the Rockingham WWTP in Rockingham, North Carolina; and the Rocky River Regional WWTP in Concord, North Carolina.

5.     Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes, are discharged to the Great Pee Dee River, and flow downstream to Plaintiff's SWTP. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's properties have been, and will continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.     Defendants' PFAS contaminate Plaintiff's water source at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff requires new water treatment technologies to remove, and provide water free from, Defendants' PFAS.

7.     As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP that will remove Defendants' PFAS from drinking water. In addition, based on the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**DISCLAIMER**

8.     Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, Mil-Spec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.     Plaintiff's causes of action against Americhem, Inc.; Auria Albemarle, LLC; Auria Solutions USA, Inc.; BFI Waste Systems of North America, LLC; Carvana, LLC; Cascades Holding US, Inc.; Chem-Tex Laboratories, Inc.; Elevate Textiles, Inc.; HeiQ ChemTex, Inc.; Marcal Cordova LLC; Republic Services, Inc.; Waste Connections, Inc.; and Waste Connections of North Carolina, Inc. arise under North Carolina law. Plaintiff brings no cause of action against these Defendants under South Carolina law.

10.     Plaintiff's causes of action against the remaining Defendants arise under South Carolina law.

11.      Plaintiff brings no cause of action against, and seeks no relief from, any Defendant under federal law or statute.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina and sections 5-7-30 and 14-1-80 of the South Carolina Code.

13.     This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

14.     Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to

4

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Plaintiff's property located in Florence County, and the most substantial part of Defendants' alleged acts or omissions giving rise to Plaintiff's claims occurred in Florence County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

**PARTIES**

**I.    Plaintiff**

15.    Plaintiff is a municipal corporation organized and existing under the laws of South Carolina. S.C. CODE ANN. §§ 5-7-10, *et seq.*; 5-31-610. Through its Department of Public Works, Plaintiff provides potable water services to its customers.

16.    Plaintiff owns two properties at issue. The first is located at 2598 Florence Harllee Boulevard, Florence, South Carolina 29506, where Plaintiff operates the Pee Dee Regional SWTP. Approximately three miles to the northeast, Plaintiff owns land riparian to the Great Pee Dee River, where it operates a surface water intake.

17.    The Pee Dee Regional SWTP provides potable water to approximately 34,000 customers.

**II.    Defendants**

18.    Defendant **Americhem, Inc. ("Americhem")** is a Delaware corporation that operates an industrial facility located at 723 Commerce Drive, Concord, North Carolina 28025. There, Americhem uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics products for textile applications. As part of its processes, the Americhem facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Rocky River Regional WWTP. The Rocky River WWTP cannot remove Americhem's PFAS, which it discharges to the Rocky River upstream of

5

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

the Great Pee Dee River and Plaintiff's water intake. Americhem's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

19.    Defendant **Auria Albemarle, LLC** is a Delaware limited liability company, and Defendant **Auria Solutions USA, Inc.** is a Delaware corporation **(collectively "Auria")**. Auria operates an industrial facility located at 313 Bethany Road, Albemarle, North Carolina 28001, where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile products in the automotive industry. As part of its processes, the Auria facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Long Creek WWTP. The Long Creek WWTP cannot remove Auria's PFAS, which it discharges to a tributary upstream of the Great Pee Dee River and Plaintiff's water intake. Auria's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

20.    Defendants **BFI Waste Systems of North America, LLC ("BFI")** and **Republic Services, Inc. ("RSI")** are Delaware corporations that own and operate the Charlotte Motor Speedway Landfill, located at 5105 Morehead Road, Concord, North Carolina 28027. BFI and RSI discharge wastewater from the landfill, which contains significant amounts of PFOA, PFOS, PFHxs, PFNA, PFBS, GenX Chemicals, and/or their precursors, to the Rocky River WWTP. The Rocky River WWTP cannot remove these PFAS from BFI's and RSI's wastewater before the WWTP discharges their PFAS into the Rocky River upstream of the Great Pee Dee River and Plaintiff's water intake. BFI's and RSI's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

21.    Defendant **Burlington Industries, Inc. ("Burlington")** was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River. Over the course of the facility's operations, Burlington used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Burlington discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Plaintiff's water intake. Wastewater lagoons and other storage basins at the facility have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS transport to the Great Pee Dee River upstream Plaintiff's water intake. Burlington's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source. Burlington also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Great Pee Dee River watershed upstream of Plaintiff's water intake. PFAS from Burlington's biosolids have accumulated in the Great Pee Dee River watershed, enter surface waters, continually flow downstream to Plaintiff's water intake, and contaminate Plaintiff's properties and its water source.

7

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

22.     Defendant **Carvana, LLC ("Carvana")** is an Arizona limited liability company authorized to do business in South Carolina. Carvana owns and operates a facility located at 3045 New Town Way SW, Concord, North Carolina 28027, where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in automotive washing, detailing, and painting operations. As part of its processes, the Carvana facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Rocky River Regional WWTP. The Rocky River Regional WWTP cannot remove Carvana's PFAS, which it discharges to the Rocky River upstream of the Great Pee Dee River and Plaintiff's water intake. Carvana's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

23.     Defendant **Cascades Holding US, Inc. ("Cascades")** is a Delaware corporation authorized to do business in South Carolina. Cascades owns and operates industrial facilities located at 805 Midway Road and 112 Cascades Way—both in Rockingham, North Carolina 28739. At its facilities, Cascades uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of products in the paper industry. As part of their processes, the Cascades facilities discharge industrial wastewater contaminated with products that contain or degrade to these PFAS to the Rockingham WWTP. The Rockingham WWTP cannot remove Cascades' PFAS, which it discharges to the Great Pee Dee River upstream of Plaintiff's water intake. Cascades' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

24.     Defendants **HeiQ Chemtex, Inc.** and **Chem-Tex Laboratories, Inc. (collectively "Chem-Tex")** are North Carolina corporations that own and/or operate an industrial facility located at 2725 Armentrout Drive, North Carolina 28025. There, Chem-Tex uses products that

8

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of chemicals for textile, paper, and petroleum extraction industries. As part of its processes, the Chem-Tex facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Rocky River Regional WWTP. The Rocky River Regional WWTP cannot remove Chem-Tex's PFAS, which it discharges to the Rocky River upstream of the Great Pee Dee River and Plaintiff's water intake. Chem-Tex's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

25.     Defendant **Domtar Paper Company, LLC ("Domtar")** is a Delaware limited liability company that does business in South Carolina. Domtar owns and/or operates the Marlboro Mill, located at 585 Willamette Rd, Bennettsville, SC 29512. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of certain paper products. As part of its processes, the Marlboro Mill directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into the Great Pee Dee River upstream of Plaintiff's water intake. Domtar's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

26.     Defendant **Elevate Textiles, Inc. ("Elevate")** is a Delaware corporation authorized to do business in South Carolina. Elevate owns and operates an industrial facility located at 740 Old Cheraw Highway, Rockingham, NC 28379 ("Richmond Plant"), which was previously owned and operated by Defendant Burlington. Throughout the facility's operation, both Burlington and Elevate used, and Elevate continues to use, products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals. As part of their processes, Burlington and Elevate

9

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

discharged, and Elevate continues to discharge, industrial wastewater contaminated with products that contain or degrade to these PFAS from the Richmond Plant to Hitchcock Creek upstream of Great Pee Dee River. The Richmond Plant does not remove Defendants' PFAS, and it discharged and continues to discharge their PFAS into the Great Pee Dee River upstream of Plaintiff's water intake. Defendants' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

27.     Defendant **J.P. Stevens & Company, Inc.** was a Delaware corporation authorized to do business in the State of South Carolina until 1999. J.P. Stevens & Company, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"JPS."** From 1946 to 1986 or 1987, JPS operated the Delta Mills industrial facility located at or around 4351 Brickyard Road, Wallace, South Carolina 29596. JPS transferred the Delta Mills facility to Defendant **Delta Mills, Inc.,** who owned and operated the facility from 1986 or 1987 to 2006. Delta Mills, Inc. was a Delaware corporation with its principal place of business located at 700 North Woods Drive, Fountain Inn, South Carolina 29644. Delta Mills, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"Delta Mills."** Over the course of the Delta Mills facility operations, Defendants JPS and Delta Mills used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of their processes, JPS and Delta Mills discharged industrial wastewater contaminated with these PFAS from the facility's own WWTP to the Great Pee Dee River upstream of Plaintiff's water intake. JPS and Delta Mills also created wastewater lagoons on the facility property, which were contaminated with high levels of these PFAS that accumulated over decades. JPS's and Delta Mills' PFAS continually overflow and/or migrate to the Great Pee Dee River upstream of Plaintiff's water intake. JPS's and Delta Mills' PFAS resist

10

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

28.     Defendant **Marcal Cordova LLC ("Marcal")** is a Delaware corporation that owns and operates an industrial facility located at 126 1st Street, Cordova, North Carolina 28330. There, Marcal uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of paper products. As part of its processes, the Marcal facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Rockingham WWTP. The Rockingham WWTP cannot remove Marcal's PFAS, which it discharges to the Great Pee Dee River upstream of Plaintiff's water intake. Marcal's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source at Pee Dee Regional SWTP.

29.     Defendants **Mohawk Industries, Inc.** and **Aladdin Manufacturing Corporation** are Delaware corporations authorized to do business in the State of South Carolina (collectively **"Mohawk"**). Mohawk owned Oak River Mill located at 2118 Marlboro Road, Blenheim, South Carolina 29516, which Mohawk operated until its closing in October 2022. For nearly 60 years, Mohawk used products that contain or degrade to PFOA, PFOS, PFHxs, PFNA, PFBS, and/or GenX Chemicals in the manufacture of carpet products at Oak River Mill. As part of its processes, Oak River Mill discharged industrial wastewater contaminated with products that contain or degrade to these PFAS directly into the Great Pee Dee River upstream of Plaintiff's water intake. Oak River Mill also utilized wastewater lagoons contaminated with high levels of these PFAS and/or their precursors on the border of the Great Pee Dee River. These lagoons currently and continually overflow and/or release PFAS-contaminated wastewater into the Great Pee Dee River upstream of Plaintiff's water intake. PFAS and/or their precursors from both Mohawk's legacy

11

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

discharges and continuing lagoon discharges resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

30.     Defendants **Waste Connections, Inc.** and **Waste Connections of North Carolina, Inc.** (collectively **"WC"**) are Delaware corporations that own and operate the Anson Landfill, located at 375 Dozer Drive, Polkton, North Carolina 28135. WC discharges wastewater from the landfill, which contains significant amounts of PFOA, PFOS, PFHxs, PFNA, PFBS, GenX Chemicals, and/or their precursors, to the Anson County Regional WWTP. The Anson County Regional WWTP cannot remove these PFAS from WC's wastewater before the WWTP discharges WC's PFAS into the Great Pee Dee River upstream of Plaintiff's water intake. WC's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River, and thereby contaminate Plaintiff's properties and its water source.

**FACTUAL ALLEGATIONS**

**I.      Background and Hazards of PFAS**

31.      PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

32.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

33.     There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

34.    There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

35.    Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

36.    PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

37.    While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

13

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

38.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

39.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors. Terminal short-chain PFAS include PFBS and GenX Chemicals.

40.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., *Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)* (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems." *Id.*

41.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding the 2009 provisional

14

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

42.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

43.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

15

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

44.    Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

45.    In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

46.    At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

47.    Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX

16

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

48.    EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

49.    EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., *Final PFAS Nat'l Drinking Water Regulation Landing Page*, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

17

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

50.    The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

51.    EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs. Plaintiff has conducted a diligent investigation into this issue, is seeking to address it in an expedited manner, and for this reason seeks prompt relief from the Court.

## II.    Contamination of the Great Pee Dee River with PFAS

52.    Plaintiff's water intake rests on the Great Pee Dee River in Florence, South Carolina, which draws water from the river for treatment at the Pee Dee Regional SWTP before distribution to customers.

53.    Defendants' industrial facilities, and/or their applicable WWTPs, operate along the Great Pee Dee River or one of its tributaries upstream of Plaintiff's water intake.

54.    PFAS sampling of the Great Pee Dee River upstream of Plaintiff's water intake confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout the river. These PFAS flow downstream and contaminate the water at Plaintiff's water intake at

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling at Plaintiff's water intake confirms the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

55.     Defendants are, or were, owners and operators of manufacturing plants and waste disposal facilities upstream of Plaintiff's water intake. In their industrial processes, Defendants utilize, or utilized, products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS, which Defendants ultimately discharge to surface waters upstream of Plaintiff's water intake.

56.     Defendants' PFAS and their precursors flow downstream to Plaintiff's water intake, damaging Plaintiff's property and contaminating its water source.

57.     The Pee Dee Regional SWTP utilizes conventional water treatment technologies to treat raw water, none of which remove PFAS. Instead, the Pee Dee Regional SWTP requires new water treatment technologies to do so.

58.     All Defendants knew or should have known that conventional water treatment technologies used by direct discharger Defendants and WWTPs cannot remove PFAS from wastewater. All Defendants also knew or should have known that their treated wastewater contaminates surface waters and the water Plaintiff draws for its customers.

**III.     Defendants have harmed Plaintiff and Plaintiff's community.**

59.     For decades and unknown to Plaintiff, Defendants have discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Great Pee Dee River, which has caused, and continues to cause, contamination of these waters with PFAS chemicals exceeding EPA's health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff

19

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

cannot use its properties and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

60.     Defendants' conduct has proximately caused the contamination of the Greet Pee Dee River; and of Plaintiff's land, its SWTP, and its water distribution system with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

61.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties, its right to use the Great Pee Dee River, and has caused Plaintiff additional past, present, and future injury to property.

62.     Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Great Pee Dee River, which they knew or should have known contaminated Plaintiff's properties.

## FIRST CAUSE OF ACTION

### Private Nuisance

63.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

64.     Plaintiff is a municipal corporation engaged in constructing, operating, maintaining, improving, and extending a water distribution system for residents of Florence County. It uses its properties for those purposes, including the withdrawal of raw water from the Great Pee Dee River, the treatment of raw water, and the distribution of treated water to customers in Florence County.

20

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

65.     Plaintiff owns riparian land abutting the Great Pee Dee River, and Plaintiff has a property right in the reasonable use of these waters, including for the provision of water to its customers.

66.     Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Great Pee Dee River, with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors at concentrations exceeding those EPA deems unsafe for consumption.

67.     Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent new water treatment technology.

68.     Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its riparian rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

69.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

70.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the Great Pee Dee River and Plaintiff's property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

71.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

72.     The ongoing contamination of the Great Pee Dee River and Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of the Great Pee Dee River to supply potable water to its customers.

73.     Defendants' interference with Plaintiff's use of its properties can be abated by funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

74.     Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>

**Public Nuisance**

75.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

76.     Plaintiff is a municipal corporation engaged in the constructing, operating, maintaining, improving, and extending a water distribution system for residents of Florence County. It uses its properties for those purposes, including the withdrawal of raw water from the Great Pee Dee River, the treatment of raw water, and the distribution of treated water to customers in Florence County.

77.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

78.     Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

79.     Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its properties; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use the Great Pee Dee River; interference with the use of Plaintiff's SWTP and water distribution system; and lost revenue.

80.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Great Pee Dee River and Plaintiff's properties.

81.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

82.     As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

83.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

23

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

84.     Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

85.     Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

86.     Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trespass

87.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

88.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution systems.

89.     Defendants Americhem, Auria, BFI, Carvana, Cascades, Chem-Tex, Marcal, RSI, and WC intentionally discharged and continue to discharge PFAS to their applicable WWTPs, respectively, notwithstanding that they knew and/or reasonably should have known that:

(a)     these WWTPs cannot remove their PFAS from wastewater before discharging to surface waters upstream of Plaintiff's water intake on the Great Pee Dee River;

24

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

(b)     Plaintiff draws water from the Great Pee Dee River for the provision of potable water to its customers;

(c)     water Plaintiff draws from the Great Pee Dee River is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

(d)     water contaminated with high concentrations of these Defendants' PFAS invades Plaintiff's properties.

90.     Defendants Burlington, Domtar, Delta Mills, Elevate, JPS, and Mohawk intentionally discharged and continue to discharge PFAS to the Great Pee Dee River, notwithstanding that these Defendants knew and/or reasonably should have known that:

(a)     Plaintiff draws water from the Great Pee Dee River for the provision of drinking water to its customers;

(b)     water Plaintiff draws from the Great Pee Dee River is contaminated with the PFAS they discharge to the River; and, thereby,

(c) water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

91.     Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and beyond what EPA deems unsafe for consumption.

92.     Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

93.     Defendants Americhem, Auria, BFI, Carvana, Cascades, Chem-Tex, Marcal, RSI, and WC intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to their applicable WWTPs, respectively. Defendants Burlington, Domtar, Delta Mills, Elevate, JPS, and Mohawk intend and/or intended that, while using PFAS in their industrial processes, PFAS-containing wastewater be discharged to the Great Pee Dee River. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and riparian rights.

94.     Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTP, and related buildings, improvements, and equipment that make up its water distribution systems. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

95.     As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

96.     Defendants' ongoing trespasses can be abated by requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

97.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

98.     Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct

26

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTP, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

99.     Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive; that conventional wastewater treatment technologies utilized by themselves or their WWTPs could not remove their PFAS; and that surface waters—including the Great Pee Dee River—were vulnerable to the contamination that has taken and now takes place.

100.     Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's properties.

101.     Additionally, Defendant Burlington had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

102.     By continually suppling biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Burlington negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

103.     Because Burlington created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Great Pee Dee River. Burlington also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

104.    Burlington negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Great Pee Dee River, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

105.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value; the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; future costs of acquiring, installing, and operating adequate water treatment technologies; and other damages to be proved at trial.

106.    Defendants are jointly and severally liable to Plaintiff for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
**Strict Products Liability – Ultrahazardous Activity**
**(Burlington)**

107.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

108.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

28

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

109. Burlington manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water source and Plaintiff's properties.

110. Burlington knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Burlington knew that there was no safe dose of PFOA or PFOS.

111. Burlington knew or expected that these hazardous PFAS chemicals that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water source and Plaintiff's properties while in essentially the same condition as when they left Burlington's hands.

112. Burlington manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

113. Burlington and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Burlington and received financial benefits from their sales and distribution.

114. As a direct and proximate result of Burlington's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have damaged Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

115. As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its

29

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

**SIXTH CAUSE OF ACTION**
**Strict Products Liability – Design Defect**
**(Burlington)**

116.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

117.     PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

118.     Burlington knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

119.     Burlington's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water source and Plaintiff's properties.

120.     Burlington's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

121.     Burlington knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water source and Plaintiff's properties.

122.     Burlington's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

(a)     PFAS resist environmental degradation;

(b)     PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

(c)     Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

(d)     PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e)     Burlington failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f)     There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Burlington could have employed.

123.    Burlington's products containing or degrading to these PFAS chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

124.    The foreseeable risk of harm to public health and property posed by Burlington's products containing these PFAS outweighed and outweigh the cost to Burlington of reducing or eliminating those risks.

125.    A reasonable product manufacturer knew or should have known of the significant dangers posed by Burlington's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

126.    As a direct and proximate result of the sale and application of Burlington's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

127.    As a direct, proximate, and foreseeable result of the sale and application of Burlington's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to

31

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

**SEVENTH CAUSE OF ACTION**
**Strict Products Liability – Failure to Warn**
**(Burlington)**

128.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

129.    Burlington manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

130.    Burlington's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and Burlington knew that agricultural users purchased and used its products without inspection for defects.

131.    Burlington knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, and thereby entering and contaminating Plaintiff's water source and Plaintiff's properties.

132.    Burlington knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Burlington's biosolid products unreasonably dangerous.

133.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Burlington failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

134.   Burlington failed to describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of such products. As a result of these failures, Burlington's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

135.   As a direct and proximate result of Burlington's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors have damaged Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from contamination with these chemicals.

136.   As a direct, proximate, and foreseeable result of Burlington's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial.

### EIGHTH CAUSE OF ACTION
**Breach of Implied Warranties**
**(Burlington)**

137.   Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

138.   Burlington manufactured, sold, and distributed its biosolid products to be used in the agricultural context.

139.   Burlington's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Burlington knew or had reason to know that such biosolids were not fit for the known and particular uses on agricultural lands.

33

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

140.    Burlington knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Great Pee Dee River, causing Burlington's PFAS to infiltrate these surface waters.

141.    Burlington knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Burlington knew that there is no safe dose of PFOA or PFOS.

142.    Burlington breached applicable implied warranties, and as a result, caused the contamination of Plaintiff's water source and Plaintiff's properties, and Plaintiff is unable to provide potable water free from Burlington's PFAS.

143.    As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Burlington's PFAS, future costs of installing adequate water treatment technologies, and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Burlington's breaches of implied warranties.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(b)     Enter a judgment and decree against all Defendants requiring them to abate their trespasses onto Plaintiff's properties;

34

(c)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water systems by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(d)     Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(e)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

/s/ John B. White. Jr.
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 12, 2024

ELECTRONICALLY FILED - 2024 Dec 12 11:51 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Hannah Cory Caldwell be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hannah Cory Caldwell
Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 20 1:23 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:     City of Florence v. Burlington Industries, Inc.

        Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Hirlye Ray Lutz III be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Hirlye Ray Lutz III
        Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 20 1:24 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina
## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

       Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Frank Jerome Tapley be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Frank Jerome Tapley
       Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 20 1:24 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

　　　　Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Robert Akira Watson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Robert Akira Watson
　　　　Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 20 1:23 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 20, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:     City of Florence v. Burlington Industries, Inc.

        Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Brett Cooper Thompson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Brett Cooper Thompson
        Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 23 4:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**MOTION FOR PRO HAC VICE ADMISSION OF HANNAH CORY CALDWELL**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hannah Cory Caldwell, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mrs. Caldwell's admission and received no objection.

1

Mrs. Caldwell is a member in good standing with her local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 27, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

2

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| | | |
|---|---|---|
| The City of Florence, South Carolina, | 2024-CP-21-02844 | In The Court of Common Pleas Twelfth Judicial Circuit |
| Plaintiff | Case No. | Tribunal |
| vs. | | |
| | Mailing Address of Tribunal: | 180 N. Irby Street |
| Burlington Industries, Inc., | | Florence, SC 29501 |
| Defendant | | |

Comes now __Hannah Cory Caldwell__, applicant herein, and respectfully represents the following:

1. Applicant resides at:

428 Glenwood Road
Street Address

| Birmingham | Jefferson | Alabama | 35216 |
|---|---|---|---|
| City | County | State | Zip Code |

205-271-7113
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South
Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-370-6021 | 205-324-7896 | hcaldwell@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

The City of Florence, South Carolina to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since September 19th of 2019 , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/19/2019 |
| United States District Court Northern District of Alabama | 10/24/2019 |
| United States District Court Southern District of Alabama | 10/24/2019 |
| United States District Court Middle District of Alabama | 10/24/2019 |
| Alabama state courts | 10/24/2019 |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is  Marghretta H. Shisko  of the  John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29306 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

100106

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

Yes - See attached Exhibit A

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____11th____ day of __December__, 20_24_

___Kevin G Coldwell___
APPLICANT

## VERIFICATION

STATE OF  ALABAMA                          )

COUNTY OF  JEFFERSON                       )

I,        Hannah Cory Caldwell                                    , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.  I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice.  Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding.  Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_APPLICANT/AFFIANT_

Subscribed and sworn to before me this ____11th____ day of __December__ , 20 _24_

_(Notary Signature)_

Notary Public for the State of __Alabama__
My Commission Expires: __October 22, 2028__

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this __12TH__ day of __December__ , 20 _24_

LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this __12th__ day of __December__ , 20 _24_

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al | Active | 10/18/2024 | John B. White | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/11/2024 | Marghretta Shisko | Pending |

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Hannah Cory Caldwell _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 19, 2019 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ December 5, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | FOR THE TWELFTH JUDICIAL CIRCUIT |

| | |
|---|---|
| CITY OF FLORENCE, SOUTH CAROLINA, | CASE NO. 2024-CP-21-02844 |
| Plaintiff, | |
| v. | |
| ALADDIN MANUFACTURING CORPORATION, *et al.*, | **MOTION FOR PRO HAC VICE ADMISSION OF BRETT COOPER THOMPSON** |
| Defendants. | |

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Brett Cooper Thompson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Thompson's admission and received no objection.

1

Mr. Thompson is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 27, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

2

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

|  |  | In the Court of Common Pleas Twelfth Judical Circuit |
|---|---|---|
| The City of Florence, South Carolina | 2024-CP-21-02844 |  |
| Plaintiff | Case No. | Tribunal |
| vs. |  | Mailing Address of Tribunal: |
|  |  | 180 N. Irby Street |
| Burlington Industries, Inc., |  | Florence, SC 29501 |
| Defendant |  |  |

Comes now ___Brett Cooper Thompson___, applicant herein, and respectfully represents the following:

1. Applicant resides at:

5216 10th Terrace South

Street Address

| Birmingham | Jefferson | Alabama | 35222 |
|---|---|---|---|
| City | County | State | Zip Code |

205-207-7623

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South

Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 615-870-8952 | 205-324-7896 | bthompson@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

City of Florence, South Carolina to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___September 30th___ of ___2011___, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of ___Alabama___ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/30/2011 |
| United States District Court Northern District of Alabama | 10/19/2011 |
| United States District Court Middle District of Alabama | 10/19/2011 |
| United States District Court Southern District of Alabama | 3/7/2018 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is _____ Marghretta Shisko _____ of the _____ John B. White, Jr., P.A. _____

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spantanburg | Spartanburg | South Carolina | 29302 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

_100106_

South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| Yes - See attached Exhibit A |
| --- |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
| --- |

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____13th_____ day of _December_, 20 _24_

_____
APPLICANT

*Page 3 of 4*

## VERIFICATION

STATE OF __Alabama__ )

COUNTY OF __Jefferson__ )

I, __Brett Cooper Thompson__ , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this __13th__ day of __December__ , 20 __24__

_____
(Notary Signature)

Notary Public for the State of __alabama__

My Commission Expires: __9/15/28__

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this __16th__ day of __December__ , 20 __24__

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this __16th__ day of __December__ , 20 __24__

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Woodruff-Roebuck Water District v. AFL Telecommunications, LLC, et al | Active | 7/3/2024 | John B. White | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/22/2024 | John B. White | Granted |
| Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al | Active | 8/22/2024 | John B. White | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/13/2024 | John B. White | Pending |

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that ___**Brett Cooper Thompson**___ was duly and legally admitted to practice law by the Supreme Court of Alabama on ___September 30, 2011___ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on ___December 4, 2024___ with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | FOR THE TWELFTH JUDICIAL CIRCUIT |

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**MOTION FOR PRO HAC VICE ADMISSION OF ROBERT AKIRA WATSON**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Robert Akira Watson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Watson's admission and received no objection.

1

Mr. Watson is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 27, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

City of Florence, South Carolina,
_____
**Plaintiff**

vs.

Burlington Industries, Inc.,
_____
**Defendant**

Case No. 2024-CP-21-02844

In the Court of Common Pleas
Twelfth Judicial Circuit
_____
**Tribunal**

Mailing Address of Tribunal:

180 N. Irby Street
Florence, SC 29501
_____

Comes now  Robert Akira Watson _____, applicant herein, and respectfully represents the following:

1. **Applicant resides at:**

5816 Southhall Rd.
_____
**Street Address**

| Birmingham, AL | Jefferson | Alabama | 35222 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |

205-207-7121
_____
**Telephone**

2. **Applicant is an attorney and a member of the law firm of (or practices law under the name of)**

Cory Watson, P.C.
_____, with offices at

2131 Magnolia Avenue South
_____
**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 205-328-2200 | 205-354-3666 | 205-324-7896 | awatson@corywatson.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

3. **Applicant has been retained personally or as a member of the above-named law firm by**

City of Florence, South Carolina
_____ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. **Since**  September 25th **of**  2020 _____, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of
Alabama _____ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/25/2020 |
| United States District Court Northern District of Alabama | 11/16/2020 |
| United States District Court Southern District of Alabama | 12/2/2020 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is ___Marghretta Shisko___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S Pine Street/ P.O. Box 2465 (29304)
**Street Address**

| Spartanburg | Spartanburg | South Carolina | 2930A |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhite.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

100106
_____

South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

Yes - See Attached Exhibit A

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

Yes

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____11th_____ day of December , 20 24

_____
APPLICANT

# VERIFICATION

STATE OF ___Alabama___ )

COUNTY OF ___Jefferson___ )

I, ___Robert Akira Watson___ , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___11th___ day of ___December___ , 20 __24__

_____
(Notary Signature)

Notary Public for the State of ___Alabama___
My Commission Expires: ___October 22, 2028___

[Notary Seal: HEATHER L. JONES — MY COMMISSION EXPIRES OCTOBER 22, 2028 — NOTARY PUBLIC — STATE OF ALABAMA]

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___12th___ day of ___December___ , 20 __24__

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___12th___ day of ___December___ , 20 __24__

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Woodruff-Roebuck Water District v. AFL Telecommunications, LLC, et al | Active | 7/3/2024 | Marghretta Shisko | Granted |
| Laurens County Sewer Commission v. Cone Mills Receiver, LLC, et al | Active | 8/21/2024 | Marghretta Shisko | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/22/2024 | Marghretta Shisko | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/11/2024 | Marghretta Shisko | Pending |

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Robert Akira Watson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 25, 2020 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ December 4, 2024 _____

with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**MOTION FOR PRO HAC VICE ADMISSION OF HIRLYE RAY LUTZ, III**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Lutz's admission and received no objection.

1

Mr. Lutz is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 27, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

City of Florence, South Carolina,
**Plaintiff**

2024-CP-21-02844
**Case No.**

In the Court of Common Pleas Twelfth Judicial Circuit
**Tribunal**

Burlington Industries, Inc.,
**Defendant**

**Mailing Address of Tribunal:**

180 North Irby Street
Florence, SC 29501

Comes now Hirlye Ray Lutz, III _____, applicant herein, and respectfully represents the following:

1. Applicant resides at:

412 Ves Trace
**Street Address**

Vestavia Hills
**City**

Jefferson
**County**

Alabama
**State**

35216
**Zip Code**

205-207-7106
**Telephone**

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. _____, with offices at

2131 Magnolia Avenue South
**Street Address**

Birmingham
**City**

Jefferson
**County**

Alabama
**State**

35205
**Zip Code**

205-328-2200
**Primary Telephone**

205-914-1502
**Cell Phone**

205-324-7896
**Fax Number**

rlutz@corywatson.com
**Email Address**

3. Applicant has been retained personally or as a member of the above-named law firm by

The City of Florence, South Carolina _____ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since September 27th of 2006 _____, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama _____ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2006 |
| United States District Court Northern District of Alabama | 10/19/2006 |
| United States District Court Middle District of Alabama | 10/19/2006 |
| United States District Court Southern District of Alabama | 10/19/2006 |
| United States District Court Western District of Wisconsin | 5/24/2013 |
| United States District Court Southern District of Indiana | 12/16/2011 |
| Please see the attachment below for remaining courts. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is Marghretta Shisko _____ of the John B. White, Jr., P.A. _____ law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

Spartanburg _____   Spartanburg _____   South Carolina _____   29305 _____
City                                        County                                      State                                        Zip Code

864-594-5988 _____   864-706-8701 _____   864-594-5870                   mshisko@johnbwhite.com
Primary Telephone                 Cell Phone                             Fax Number                     Email Address

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

100106
South Carolina Bar Number
(You must provide Bar Number)

| Yes - See attached Exhibit A |
|---|

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ___11th___ day of ___December___, 20_24_

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# VERIFICATION

STATE OF SOUTH CAROLINA        )

COUNTY OF JEFFERSON            )

I, Hirlye Ray Lutz, III _____, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ____11th____ day of __December__ , 20 24

_____
(Notary Signature)

Notary Public for the State of Alabama
My Commission Expires: October 22, 2028

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this __12th__ day of __December__ , 20 24

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this 19th __12th__ day of __December__ , 20 24

_____

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF HIRLYE R. LUTZ, III**

| Court | Date Admitted: |
|---|---|
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| US Court of Appeals for the 11th Circuit | 2/5/2014 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Woodruff-Roebuck Water District v. AFL Telecommunications, LLC, et al | Active | 7/3/2024 | John B. White | Granted |
| Laurens County Sewer Commission v. Cone Mills Receiver, LLC et al | Active | 8/22/2024 | Marghretta Shisko | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/22/2024 | John B. White | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/11/2024 | Marghretta Shisko | Pending |

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ **Hirlye Ray Lutz III** _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ **September 26, 2006** _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ **December 5, 2024** _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | FOR THE TWELFTH JUDICIAL CIRCUIT |

| | |
|---|---|
| CITY OF FLORENCE, SOUTH CAROLINA,<br><br>Plaintiff,<br><br>v.<br><br>ALADDIN MANUFACTURING CORPORATION, *et al.*,<br><br>Defendants. | CASE NO. 2024-CP-21-02844<br><br>**MOTION FOR PRO HAC VICE ADMISSION OF FRANK JEROME TAPLEY** |

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Tapley's admission and received no objection.

1

Mr. Tapley is a member in good standing with his local bar association, and the Verified

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: December 27, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

2

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

City of Florence, South Carolina,
**Plaintiff**

vs.

Burlington Industries, Inc.,
**Defendant**

**Case No.** 2024-CP-21-02844

In the Court of Common Pleas
Twelfth Judicial Circuit
**Tribunal**

**Mailing Address of Tribunal:**

180 North Irby Street
Florence, SC 29501

Comes now ___Frank Jerome Tapley___, applicant herein, and respectfully represents the following:

1. Applicant resides at:

230 Lucerne Blvd.
**Street Address**

| Homewood | Jefferson | Alabama | 35209 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |

205-207-7112
**Telephone**

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C.
, with offices at

2131 Magnolia Avenue South
**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 205-328-2200 | 205-370-1116 | 205-324-7896 | jtapley@corywatson.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

3. Applicant has been retained personally or as a member of the above-named law firm by

City of Florence, South Carolina
to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___September 26th___ of ___2003___, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of ___Alabama___ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| Alabama Supreme Court | 9/27/2003 |
| Florida Supreme Court | 4/25/2006 |
| Tennessee Supreme Court | 2/17/2022 |
| United States District Court Northern District of Alabama | 10/22/2003 |
| United States District Court Middle District of Alabama | 10/22/2003 |
| United States District Court Southern District of Alabama | 10/22/2003 |
| Please see the attachment for remaining court admission information. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___Marghretta Shisko___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

**Street Address**

| Spartanburg | Spartanburg | South Carolina | 29303 |
| --- | --- | --- | --- |
| **City** | **County** | **State** | **Zip Code** |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhite.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

100106
_____

South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| Yes - See attached Exhibit A |
| --- |

    11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
| --- |

    12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____11th_____ day of _December_, 20_24_

_____
APPLICANT

# VERIFICATION

STATE OF  ALABAMA                              )

COUNTY OF  JEFFERSON                      )

I,              Frank Jerome Tapley                                    , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ____11th____ day of __December__ , 20 __24__

_____
(Notary Signature)

Notary Public for the State of __Alabama__

My Commission Expires: __October 22, 2028__

*(Notary Seal: HEATHER L. JONES — MY COMMISSION EXPIRES OCTOBER 22, 2028 — NOTARY PUBLIC — STATE OF ALABAMA)*

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this __12th__ day of __December__ , 20__24__

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this __12th__ day of __December__ , 20 __24__

_____

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**ATTACHMENT TO PRO HAC VICE APPLICATION OF FRANK JEROME TAPLEY**

| Court | Date Admitted: |
|---|---|
| USDC Northern District of Florida | 12/16/2005 |
| USDC Middle District of Florida | 6/13/2007 |
| USDC Southern District of Indiana | 12/16/2011 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| USDC Southern District of Florida | 4/18/2012 |
| USDC Western District of Wisconsin | 5/24/2013 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 11th Circuit | 8/23/2017 |
| US Eastern District of Arkansas | 11/11/2019 |
| US Western District of Arkansas | 11/11/2019 |
| US Court of Appeals for the 6th Circuit | 5/13/2021 |
| USDC Western District of Tennessee | 2/15/2023 |
| United States Supreme Court | 3/20/2023 |
| USDC Northern District of Ohio | 4/13/2023 |
| USDC Eastern District of Tennessee | 5/25/2023 |
| USDC Middle District of Tennessee | 8/14/2023 |

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Woodruff-Roebuck Water District v. AFL Telecommunications, LLC, et al | Active | 7/9/2024 | Marghretta Shisko | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/22/2024 | John B. White | Granted |
| Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al | Active | 8/22/2024 | John B. White | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/11/2024 | John B. White | Pending |

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that **Frank Jerome Tapley** was duly and legally admitted to practice law by the Supreme Court of Alabama on **September 26, 2003** and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on **December 4, 2024** with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama



# The Supreme Court of South Carolina
## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

       Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Hannah Cory Caldwell be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hannah Cory Caldwell
       Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 27 11:11 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Hirlye Ray Lutz III be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hirlye Ray Lutz III
       Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:     City of Florence v. Burlington Industries, Inc.

        Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Frank Jerome Tapley be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Frank Jerome Tapley
        Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 27 11:22 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 20, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:    City of Florence v. Burlington Industries, Inc.

      Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Brett Cooper Thompson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Brett Cooper Thompson
      Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 17, 2024

The Honorable Doris Poulos O'Hara
Clerk of Court
181 N. Irby Street MSC-E
Florence, SC 29501

RE:     City of Florence v. Burlington Industries, Inc.

Case No.: 2024-CP-21-02844

Dear Ms. O'Hara:

I certify that the Office of Bar Admissions has received the verified application requesting Robert Akira Watson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Robert Akira Watson
        Marghretta Shisko

ELECTRONICALLY FILED - 2024 Dec 27 11:32 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 30 4:42 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



## JOHN B. WHITE JR. P.A.
### Law Firm

December 30, 2024

**VIA E-FILING**
Florence County Clerk of Court


Re:     *City of Florence, South Carolina v. Burlington Industries, Inc. et al.*
        C/A No.: 2024-CP-21-02844

Dear Madame:

    This office represents the plaintiff in the above-referenced matter.  Please be advised that this action is included in the South Carolina Local PFAS litigation that has been assigned to the Honorable Grace Gilchrist Knie.  A copy of the October 7, 2024 South Carolina Supreme Court order assigning the PFAS litigation to Judge Knie is attached. Please feel free to contact my office with any questions or concerns.

                                Sincerely,

                                */s/ Marghretta H. Shisko*

                                Marghretta H. Shisko

Enclosure


J O H N  B .  W H I T E ,  J R .
jwhite@johnbwhitelaw.com

G R I F F I N  L I T T L E J O H N  L Y N C H
glynch@johnbwhitelaw.com

M A R G H R E T T A  S H I S K O
mshisko@johnbwhitelaw.com

2 9 1  S O U T H  P I N E  S T R E E T
P . O .  B O X  2 4 6 5
S P A R T A N B U R G  S . C .  2 9 3 0 4
( 8 6 4 )  5 9 4 - 5 9 8 8

# The Supreme Court of South Carolina

RE: Local PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts (Local PFAS Litigation) currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the Local PFAS Litigation cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the Local PFAS Litigation and may schedule such hearings as may be necessary at any time without regard to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving Local PFAS Litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the Local PFAS Litigation.

ELECTRONICALLY FILED - 2024 Dec 30 4:42 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 30 4:42 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all Local PFAS Litigation cases.

This order supersedes the PFAS Litigation Order dated August 14, 2024, and shall remain in effect until amended or rescinded by the Chief Justice.

John W. Kittredge
Chief Justice of South Carolina


Columbia, South Carolina
October ___7___, 2024

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

### State of South Carolina
## Office of the Secretary of State
### The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens Inc.
P.O. Box 71, 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

*Allyson Green*

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2024 Dec 31 2:23 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**ORDER GRANTING PRO HAC VICE ADMISSION OF HANNAH CORY CALDWELL**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff City of Florence, South Carolina, to admit Hannah Cory Caldwell, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Dec 31 2:23 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



Florence Common Pleas

**Case Caption:**    Florence City Of South Carolina VS   Burlington Industries Inc ,
defendant, et al

**Case Number:**    2024CP2102844

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-31 14:08:59    page 2 of 2

ELECTRONICALLY FILED - 2024 Dec 31 9:13 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**ORDER GRANTING PRO HAC VICE ADMISSION OF HIRLYE RAY LUTZ, III**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff City of Florence, South Carolina, to admit Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Florence Common Pleas

**Case Caption:**     Florence City Of South Carolina VS   Burlington Industries Inc

**Case Number:**     2024CP2102844

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-30 17:18:45     page 2 of 2

ELECTRONICALLY FILED - 2024 Dec 31 9:13 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 31 9:20 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | FOR THE TWELFTH JUDICIAL CIRCUIT |

CITY OF FLORENCE, SOUTH CAROLINA,

               Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

               Defendants.

CASE NO. 2024-CP-21-02844

**ORDER GRANTING PRO HAC VICE ADMISSION OF FRANK JEROME TAPLEY**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff City of Florence, South Carolina, to admit Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Dec 31 9:20 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



Florence Common Pleas

**Case Caption:**    Florence City Of South Carolina VS   Burlington Industries Inc

**Case Number:**    2024CP2102844

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-30 17:18:56    page 2 of 2

ELECTRONICALLY FILED - 2024 Dec 31 9:27 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF FLORENCE | FOR THE TWELFTH JUDICIAL CIRCUIT |

|  |  |
|---|---|
| CITY OF FLORENCE, SOUTH CAROLINA, | CASE NO. 2024-CP-21-02844 |
| Plaintiff, | |
| v. | **ORDER GRANTING PRO HAC VICE ADMISSION OF BRETT COOPER THOMPSON** |
| ALADDIN MANUFACTURING CORPORATION, *et al.*, | |
| Defendants. | |

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff City of Florence, South Carolina, to admit Brett Cooper Thompson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Dec 31 9:27 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



Florence Common Pleas

**Case Caption:**     Florence City Of South Carolina VS   Burlington Industries Inc

**Case Number:**     2024CP2102844

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-30 17:19:35     page 2 of 2

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH CAROLINA,

Plaintiff,

v.

ALADDIN MANUFACTURING CORPORATION, *et al.*,

Defendants.

CASE NO. 2024-CP-21-02844

**ORDER GRANTING PRO HAC VICE ADMISSION OF ROBERT AKIRA WATSON**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff City of Florence, South Carolina, to admit Robert Akira Watson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Dec 31 9:24 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2024 Dec 31 9:24 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



Florence Common Pleas

**Case Caption:**    Florence City Of South Carolina VS   Burlington Industries Inc

**Case Number:**    2024CP2102844

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-30 17:19:17    page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS TWELFTH JUDICIAL CIRCUIT |
| COUNTY OF FLORENCE | |
| CITY OF FLORENCE, SOUTH CAROLINA, | Case No. 2024-CP-21-02844 |
| Plaintiff, | |
| v. | |
| ALADDIN MANUFACTURING CORPORATION; AMERICHEM, INC.; AURIA ALBEMARLE, LLC; AURIA SOLUTIONS USA, INC.; BFI WASTE SYSTEMS OF NORTH AMERICA, LLC; BURLINGTON INDUSTRIES, INC.; CARVANA, LLC; CASCADES HOLDING US, INC.; CHEM-TEX LABORATORIES, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; HEIQ CHEMTEX, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MARCAL CORDOVA LLC; MOHAWK INDUSTRIES, INC.; REPUBLIC SERVICES, INC.; WASTE CONNECTIONS, INC.; and WASTE CONNECTIONS OF NORTH CAROLINA, INC., | **DEFENDANT BURLINGTON INDUSTRIES, INC.'S ANSWER TO FIRST AMENDED COMPLAINT** |
| Defendants. | |

Defendant Burlington Industries, Inc. ("Burlington"), by and through its undersigned counsel, hereby files this Answer in response to Plaintiff City of Florence, South Carolina's ("Plaintiff") First Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

Burlington incorporates the following matters into the responses to each paragraph of the

1

Complaint.

A.     Burlington was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004.  Burlington has been in receivership since May 13, 2022, which is when the South Carolina Circuit Court appointed Peter McCoy, Jr. as the receiver for Burlington ("Receiver").  All responses and defenses contained in this Answer are made on behalf of Burlington's Receiver and should not be construed as a response on behalf of any other Burlington or Burlington-related entity.

B.     An investigation on behalf of the Receiver into the facts and circumstances related to this matter is ongoing.  This investigation is not complete and, therefore, the following responses and defenses should not be construed as factual representations of the Receiver.  Rather, they are based upon, and therefore necessarily limited by, the facts and information presently available to the Receiver.  Burlington reserves the right to seek to amend and/or supplement its Answer as may be appropriate or necessary in accordance with the South Carolina Rules of Civil Procedure.

C.     Burlington submits this Answer only on behalf of itself in receivership.  Where allegations are made against "Defendants" as a group, however described, Burlington's responses only apply to itself in receivership.

D.     The Complaint contains purported references to several documents, third-party publications, and statements that have often been excerpted, paraphrased, characterized, and otherwise taken out of context.  These documents, third-party publications, and statements should be considered, if at all, in context and in unmodified form, and Burlington hereby respectfully refers the Court to the respective documents, third-party publications, and statements for their complete contents.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

E.      Except as is expressly admitted, qualified, or explained herein, Burlington specifically denies each and every allegation contained in the Complaint, including without limitation any allegations contained in titles, headings, and subparagraphs of the Complaint, and specifically denies any liability to Plaintiff.  To the extent that the titles, headings, and subparagraphs of the Complaint are intended to be allegations directed at Burlington, they are denied.

F.      Burlington specifically denies that it contaminated South Carolina waterways with excessive concentrations of PFAS.[1]  Furthermore, Burlington does not concede that PFAS was present at facilities owned or operated by Burlington, nor does Burlington concede that it discharged PFAS into any bodies of water.

G.      Burlington does not concede or adopt any suggestion, implication, or assertion concerning any alleged connection, association, or causal relationship between PFAS and purported harm to humans.

<u>**RESPONSE TO STATEMENT OF THE CASE**</u>

1.      The allegations in Paragraph 1 contain introductory statements to which no response is required.  To the extent a response is required, and to the extent the allegations in Paragraph 1 are directed at Burlington, Burlington denies the allegations.  To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

---

[1] "PFAS" as used herein is a collective reference to the substances at issue in Plaintiff's Complaint: per- and polyfluoroalkyl substances (PFAS); perfluorooctanoic acid (PFOA); perfluorooctanesulfonic acid (PFOS); perfluorononanoic acid (PFNA); perfluorobutane sulfonate (PFBS); perfluorohexane sulfonate (PFHxS); and hexafluoropropylene oxide dimer acid (HFPO-DA or GenX Chemicals).

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

2.　　　To the extent the allegations in Paragraph 2 are directed at Burlington, Burlington denies the allegations.　To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

3.　　　Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and therefore denies them.

4.　　　Upon information and belief, Burlington admits only that it owned and/or operated industrial manufacturing facilities upstream of Plaintiff's water intakes.　To the extent the remaining allegations in Paragraph 4 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

5.　　　To the extent the allegations in Paragraph 5 are directed at Burlington, Burlington denies the allegations.　To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

6.　　　To the extent the allegations in Paragraph 6 are directed at Burlington, Burlington denies the allegations.　To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

7.　　　To the extent the allegations in Paragraph 7 are directed at Burlington, Burlington denies the allegations.　To the extent the allegations in this Paragraph are directed at other

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

**RESPONSE TO DISCLAIMER**

8. The allegations in Paragraph 8 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies them.

9. The allegations in Paragraph 9 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, and therefore denies them.

10. The allegations in Paragraph 10 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and therefore denies them.

11. The allegations in Paragraph 11 contain a disclaimer to which no response is required. To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies them.

**RESPONSE TO JURISDICTION AND VENUE**

12. The allegations in Paragraph 12 contain conclusions of law to which no response is required. To the extent a response is required, Burlington lacks knowledge or information

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies them.

13.     The allegations in Paragraph 13 contain conclusions of law to which no response is required.  To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies them.

14.     The allegations in Paragraph 14 contain conclusions of law to which no response is required.  To the extent a response is required, Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies them.

## RESPONSE TO PARTIES

15.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies them.

16.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies them.

17.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore denies them.

18.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore denies them.

19.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies them.

20.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

21.     Burlington admits that it was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004, and that on May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., as the receiver for Burlington.  Upon information and belief, Burlington further admits that it was the owner and operator of an industrial facility located in Society Hill, South Carolina, which is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River.  Burlington denies the remaining allegations in Paragraph 21.

22.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies them.

24.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

25.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore denies them.

26.     Upon information and belief, Burlington admits only that it previously owned and operated an industrial facility located in Rockingham, NC.  To the extent the remaining allegations in Paragraph 26 are directed at Burlington, Burlington denies them.  To the extent the remaining allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge or information sufficient to form a belief as to the truth of such allegations and therefore denies them.

27.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

28.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.

29.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, and therefore denies them.

30.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and therefore denies them.

**RESPONSE TO FACTUAL ALLEGATIONS**

31.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies them.

32.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies them.

33.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore denies them.

34.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and therefore denies them.

35.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore denies them.

36.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and therefore denies them.

37.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37, and therefore denies them.

38.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and therefore denies them.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

39. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, and therefore denies them.

40. The allegations in Paragraph 40 refer to specific publications from the United States Environmental Protection Agency ("EPA"), to which Burlington specifically craves reference and denies any allegations in Paragraph 40 that are in addition to or inconsistent with the terms of those publications.

41. The allegations in Paragraph 41 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 41 that are in addition to or inconsistent with the terms of those publications.

42. The allegations in Paragraph 42 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 42 that are in addition to or inconsistent with the terms of those publications.

43. The allegations in Paragraph 43 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 43 that are in addition to or inconsistent with the terms of those publications.

44. The allegations in Paragraph 44 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 44 that are in addition to or inconsistent with the terms of those publications.

45. The allegations in Paragraph 45 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 45 that are in addition to or inconsistent with the terms of those publications.

46.      The allegations in Paragraph 46 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 46 that are in addition to or inconsistent with the terms of those publications.

47.      The allegations in Paragraph 47 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 47 that are in addition to or inconsistent with the terms of those publications.

48.      The allegations in Paragraph 48 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 48 that are in addition to or inconsistent with the terms of those publications.

49.      The allegations in Paragraph 49 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 49 that are in addition to or inconsistent with the terms of those publications.

50.      The allegations in Paragraph 50 refer to specific publications from the EPA, to which Burlington specifically craves reference and denies any allegations in Paragraph 50 that are in addition to or inconsistent with the terms of those publications.

51.      Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, and therefore denies them.

52.      Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore denies them.

53.      To the extent the allegations in Paragraph 53 are directed at Burlington, upon information and belief, Burlington admits only that it owned and/or operated industrial facilities upstream of Plaintiff's water intake and denies any remaining allegations.  To the extent the

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

54. Burlington denies that it was the source of any alleged contamination referenced in Paragraph 54. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54, and therefore denies them.

55. To the extent the allegations in Paragraph 55 are directed at Burlington, upon information and belief, Burlington admits only that it owned and/or operated certain manufacturing plants and industrial facilities upstream of Plaintiff's water intake and denies any remaining allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

56. To the extent the allegations in Paragraph 56 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

57. Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore denies them.

58. To the extent the allegations in Paragraph 58 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

59. To the extent the allegations in Paragraph 59 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

60.     To the extent the allegations in Paragraph 60 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

61.     To the extent the allegations in Paragraph 61 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

62.     To the extent the allegations in Paragraph 62 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

<u>**RESPONSE TO FIRST CAUSE OF ACTION**</u>
**Private Nuisance**

63.     Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 62 as if fully set forth herein.

64.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64, and therefore denies them.

65.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65, and therefore denies them.

66.     To the extent the allegations in Paragraph 66 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

12

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

67. To the extent the allegations in Paragraph 67 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

68. To the extent the allegations in Paragraph 68 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

69. To the extent the allegations in Paragraph 69 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

70. To the extent the allegations in Paragraph 70 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

71. To the extent the allegations in Paragraph 71 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

72.     To the extent the allegations in Paragraph 72 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

73.     To the extent the allegations in Paragraph 73 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

74.     To the extent the allegations in Paragraph 74 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

**RESPONSE TO SECOND CAUSE OF ACTION**
**Public Nuisance**

75.     Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 74 as if fully set forth herein.

76.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and therefore denies them.

77.     Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and therefore denies them.

78.     To the extent the allegations in Paragraph 78 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them. Burlington lacks knowledge or information sufficient

14

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore denies them.

79.     To the extent the allegations in Paragraph 79 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

80.     To the extent the allegations in Paragraph 80 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

81.     To the extent the allegations in Paragraph 81 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

82.     To the extent the allegations in Paragraph 82 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

83.     To the extent the allegations in Paragraph 83 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

15

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

84.      To the extent the allegations in Paragraph 84 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

85.      To the extent the allegations in Paragraph 85 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

86.      To the extent the allegations in Paragraph 86 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO THIRD CAUSE OF ACTION
### Trespass

87.      Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 86 as if fully set forth herein.

88.      Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and therefore denies them.

89.      Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, including all subparagraphs, and therefore denies them.

90.      To the extent the allegations in Paragraph 90, including all subparagraphs, are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph, including all subparagraphs, are directed at other defendants, Burlington lacks

16

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

91.    Burlington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, including all subparagraphs, and therefore denies them.

92.    To the extent the allegations in Paragraph 92 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

93.    To the extent the allegations in Paragraph 93 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

94.    To the extent the allegations in Paragraph 94 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

95.    To the extent the allegations in Paragraph 95 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

96.    To the extent the allegations in Paragraph 96 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other

17

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## RESPONSE TO FOURTH CAUSE OF ACTION
### Negligence, Gross Negligence, and/or Recklessness

97.     Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 96 as if fully set forth herein.

98.     The allegations in Paragraph 98 contain conclusions of law to which no response is required.  To the extent a response is required, and to the extent the allegations in Paragraph 98 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

99.     To the extent the allegations in Paragraph 99 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

100.    To the extent the allegations in Paragraph 100 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

101.    The allegations in Paragraph 101 contain conclusions of law to which no response is required.  To the extent a response is required, Burlington denies the allegations in Paragraph 101.

102.    Burlington denies the allegations in Paragraph 102.

103.    Burlington denies the allegations in Paragraph 103.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

104.    Burlington denies the allegations in Paragraph 104.

105.    To the extent the allegations in Paragraph 105 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

106.    To the extent the allegations in Paragraph 106 are directed at Burlington, Burlington denies the allegations. To the extent the allegations in this Paragraph are directed at other defendants, Burlington lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies them.

<u>**RESPONSE TO FIFTH CAUSE OF ACTION**</u>
**Strict Products Liability – Ultrahazardous Activity**
**(Burlington)**

107.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 106 as if fully set forth herein.

108.    Burlington denies the allegations in Paragraph 108.

109.    Burlington denies the allegations in Paragraph 109.

110.    Burlington denies the allegations in Paragraph 110.

111.    Burlington denies the allegations in Paragraph 111.

112.    Burlington denies the allegations in Paragraph 112.

113.    Burlington denies the allegations in Paragraph 113.

114.    Burlington denies the allegations in Paragraph 114.

115.    Burlington denies the allegations in Paragraph 115.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## RESPONSE TO SIXTH CAUSE OF ACTION
### Strict Products Liability – Design Defect
### (Burlington)

116.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 115 as if fully set forth herein.

117.    Burlington denies the allegations in Paragraph 117.

118.    Burlington denies the allegations in Paragraph 118.

119.    Burlington denies the allegations in Paragraph 119.

120.    Burlington denies the allegations in Paragraph 120.

121.    Burlington denies the allegations in Paragraph 121.

122.    Burlington denies the allegations in Paragraph 122, including subparagraphs (a) through (f).

123.    Burlington denies the allegations in Paragraph 123.

124.    Burlington denies the allegations in Paragraph 124.

125.    Burlington denies the allegations in Paragraph 125.

126.    Burlington denies the allegations in Paragraph 126.

127.    Burlington denies the allegations in Paragraph 127.

## RESPONSE TO SEVENTH CAUSE OF ACTION
### Strict Products Liability – Failure to Warn
### (Burlington)

128.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 127 as if fully set forth herein.

129.    Burlington denies the allegations in Paragraph 129.

130.    Burlington denies the allegations in Paragraph 130.

131.    Burlington denies the allegations in Paragraph 131.

20

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

132.    Burlington denies the allegations in Paragraph 132.

133.    Burlington denies the allegations in Paragraph 133.

134.    Burlington denies the allegations in Paragraph 134.

135.    Burlington denies the allegations in Paragraph 135.

136.    Burlington denies the allegations in Paragraph 136.

## RESPONSE TO EIGHTH CAUSE OF ACTION
### Breach of Implied Warranties
### (Burlington)

137.    Burlington repeats and reasserts its answers and denials to Paragraphs 1 through 136 as if fully set forth herein.

138.    Upon information and belief, Burlington admits the allegations in Paragraph 138.

139.    Burlington denies the allegations in Paragraph 139.

140.    Burlington denies the allegations in Paragraph 140.

141.    Burlington denies the allegations in Paragraph 141.

142.    Burlington denies the allegations in Paragraph 142.

143.    Burlington denies the allegations in Paragraph 143.

## RESPONSE TO PRAYER FOR RELIEF

Responding to the WHEREFORE Paragraph that follows Paragraph 143 of Plaintiff's Complaint, Burlington denies any and all liability and further denies that Plaintiff is entitled to any of the relief sought in this Paragraph, including subparagraphs (a) through (e).

## AFFIRMATIVE AND OTHER DEFENSES

Burlington asserts the following defenses to the Complaint. By providing notice of these defenses, Burlington does not admit or acknowledge that it bears the burden of proof or burden of persuasion with respect to any such defense. Burlington reserves its rights to: (1) alter or

21

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

amend this list; (2) assert additional defenses or withdraw any of these defenses as may be appropriate following fact or expert discovery; and (3) rely on any other applicable defenses set forth in any Answer or notices of defenses provided by any other defendant in this action. Independent of these defenses, Burlington further demands that Plaintiff satisfy its burden to provide sufficient evidence under the applicable burden of proof for each and every element of each of its claims for which it seeks relief.

## FIRST DEFENSE

1.    Plaintiff's Complaint fails, in whole or in part, to state a claim for relief and should be dismissed in its entirety pursuant to SCRCP 12(b)(6) and 12(c).

## SECOND DEFENSE

2.    Plaintiff's claims may be barred, in whole or in part, by the applicable statutes of limitations and/or repose.

## THIRD DEFENSE

3.    Plaintiff's Complaint, and each cause of action or count alleged therein, fails to join necessary parties.

## FOURTH DEFENSE

4.    Plaintiff's claims are barred, in whole or in part, because they are not ripe for adjudication.

## FIFTH DEFENSE

5.    Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing to assert them.

## SIXTH DEFENSE

6.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## SEVENTH DEFENSE

7.      Plaintiff's claims may be barred, in whole or in part, because Plaintiff is not the real party in interest.

## EIGHTH DEFENSE

8.      Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff has failed to exhaust administrative remedies.

## NINTH DEFENSE

9.      Plaintiff's claims may be barred, in whole or in part, by the doctrine of estoppel and/or waiver.

## TENTH DEFENSE

10.     Plaintiff's claims may be barred, in whole or in part, by the doctrines of res judicata and/or collateral estoppel.

## ELEVENTH DEFENSE

11.     Plaintiff's claims may be barred, in whole or in part, by the doctrine of election of remedies.

## TWELFTH DEFENSE

12.     Pursuant to the South Carolina Contribution Among Tortfeasors Act, S.C. Code Ann. § 15-38-10, *et seq.*, any damages recoverable from Burlington should be limited to the percentage of the relative degree of fault of Burlington as compared with other parties to this action, if any, as well as other persons or entities not presently before this Court.

## THIRTEENTH DEFENSE

13.     Any alleged injuries and/or damages sustained by Plaintiff may have been caused or contributed to by the negligence, omissions or actual conduct of Plaintiff and/or other persons,

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

firms, corporations, or entities over whom Burlington had no control or right of control and for whom Burlington is not responsible.

## FOURTEENTH DEFENSE

14.    Any alleged injuries and/or damages sustained by Plaintiff may be barred, in whole or in part, by the doctrines of intervening cause and/or superseding cause.

## FIFTEENTH DEFENSE

15.    Plaintiff's claims may be barred, in whole or in part, under the doctrines of contributory negligence and/or comparative fault, and/or other applicable common law or statutory doctrines.

## SIXTEENTH DEFENSE

16.    Plaintiff's claims may be barred, in whole or in part, because Burlington's products were in conformity with (i) any federal, state or other regulations, standards, guidelines, specifications, and laws in effect; (ii) available knowledge and research of the scientific and industrial communities; and (iii) generally recognized and prevailing industry standards; and (iv) state of the art in existence at the time the design was prepared and the products were manufactured, handled, sold, distributed, and/or used.

## SEVENTEENTH DEFENSE

17.    Any product manufactured, handled, designed, sold, distributed, or used by Burlington and alleged to have caused harm to Plaintiff was, at the time, safer than any reasonable or feasible alternative designs, and any alternative designs would have been less safe, more likely to have caused injury or otherwise not feasible for their intended use.

24

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## EIGHTEENTH DEFENSE

18.     Plaintiff's claims may be barred, in whole or in part, because federal, state, and/or local authorities, departments and/or agencies authorized, ratified, or were aware of and acquiesced to actions taken by Burlington that are the subject of Plaintiff's claims. Burlington is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority, department or agency.

## NINETEENTH DEFENSE

19.     Plaintiff's claims may be barred, in whole or in part, under the doctrine of Federal Preemption, including, without limitation, express preemption, implied conflict preemption, and field preemption, pursuant to any applicable statutes, regulations, guidance documents, notices, military specification, and policy statements, enacted and/or promulgated and/or issues by Congress, federal agencies, or the executive branch.

## TWENTIETH DEFENSE

20.     Burlington asserts its rights to allocation, setoff or apportionment of fault pursuant to applicable law, as well as its rights to a proportionate reduction of any damages found against Burlington based on the negligence, omissions or other conduct of any settling tortfeasor and/or responsible third party and/or Plaintiff.

## TWENTY-FIRST DEFENSE

21.     An award of judgment rendered in favor of Plaintiff must be reduced by the amount of compensation Plaintiff received, or is entitled to receive, from any source as a result of Plaintiff's alleged injuries.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**TWENTY-SECOND DEFENSE**

22.     Plaintiff may have failed or refused to exercise reasonable care and diligence to avoid loss and minimize damages and, therefore, may not recover for losses that could have been prevented by reasonable efforts on Plaintiff's part, or by expenditures which might reasonably have been made. Recovery, if any, should therefore be reduced by Plaintiff's failure to mitigate damages, if any.

**TWENTY-THIRD DEFENSE**

23.     Burlington and its agents and/or employees acted with due care and otherwise conducted themselves at all relevant times as reasonable people and/or entities under the circumstances.

**TWENTY-FOURTH DEFENSE**

24.     Burlington has satisfied, fulfilled and performed each and every obligation and duty imposed by law, if any, to the full extent of its responsibility.

**TWENTY-FIFTH DEFENSE**

25.     Any alleged injury, damage or loss sustained by Plaintiff in connection with the subject matter of this action was not reasonably foreseeable to Burlington.

**TWENTY-SIXTH DEFENSE**

26.     Plaintiff's claims fail as a matter of substantive law and violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the South Carolina Constitution to the extent that by relying on market share or other aggregate proof of causation or liability, Plaintiff seeks to deprive Burlington of procedural and substantive safeguards including, but not limited to, statutory and common law defenses to liability and causation generally.

26

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## TWENTY-SEVENTH DEFENSE

27.　　Plaintiff's claims may be barred for lack of proximate causation between any alleged act, omission, or product of Burlington and the claims, damages, and harm alleged in Plaintiff's Complaint.

## TWENTY-EIGHTH DEFENSE

28.　　Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to identify any specific product of Burlington which was allegedly manufactured, handled, sold, distributed, or used and caused the alleged injury.

## TWENTY-NINTH DEFENSE

29.　　Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot prove that its alleged injuries were caused by exposure to PFAS allegedly contained in any product(s) manufactured, handled, distributed, used, or sold by Burlington.

## THIRTIETH DEFENSE

30.　　Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot prove that PFAS has been reliably established, through scientific means, to be capable of causing Plaintiff's alleged injuries.

## THIRTY-FIRST DEFENSE

31.　　Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that Plaintiff was exposed to a sufficient concentration or amount of PFAS, and/or for a sufficient duration, that has been reliably established, through scientific means, to be capable of causing Plaintiff's alleged injuries.

27

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## THIRTY-SECOND DEFENSE

32. Plaintiff's purported exposure to products manufactured, handled, distributed, used or sold by Burlington, if any, was too removed, indefinite, de minimis and insufficient to establish a reasonable degree of probability that any such product caused any alleged injury, damage or loss to Plaintiff.

## THIRTY-THIRD DEFENSE

33. Burlington cannot be held jointly and severally liable for the acts or omissions of third parties or other parties because their acts or omissions were separate and distinct and the alleged harm is divisible from and greater than any harm allegedly caused by acts, omissions, or products of Burlington.

## THIRTY-FOURTH DEFENSE

34. Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks to retroactively impose liability for conduct that was not actionable at the time it occurred, and Burlington may not be held liable under retroactive theories not requiring proof or fault or causation.

## THIRTY-FIFTH DEFENSE

35. Plaintiff's claims are barred, in whole or in part, because Burlington neither knew, nor should have known, that any of the chemicals or substances to which Plaintiff was allegedly exposed were hazardous or constituted a reasonable or foreseeable risk of physical harm by virtue of the prevailing state of medical, scientific, technical, and/or industrial knowledge available to Burlington at all times relevant to the claims or causes of action asserted by Plaintiff.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**THIRTY-SIXTH DEFENSE**

36.    Burlington is entitled to all procedural, substantive, and other protections, caps, and limitations provided by applicable state statutes and other state laws regarding Plaintiff's claims for compensatory and punitive damages. Burlington specifically pleads the application of S.C. Code Ann. § 15-32-530 to this action.

**THIRTY-SEVENTH DEFENSE**

37.    The Complaint fails to state a claim upon which punitive damages may be awarded. Nor did Burlington engage in any conduct that would permit an award of punitive damages. And, any award of punitive damages would violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, and various articles and sections of the South Carolina Constitution.

**THIRTY-EIGHTH DEFENSE**

38.    To the extent Plaintiff seeks punitive damages against Burlington under a strict liability or warranty cause of action, those claims may be barred, in whole or in part, if punitive damages are not recoverable under those claims pursuant to applicable law.

**THIRTY-NINTH DEFENSE**

39.    Plaintiff's claims may be barred, in whole or in part, by the political question and separation of powers doctrines because their claims implicate issues of statewide importance that are reserved for state regulation.

**FORTIETH DEFENSE**

40.    Plaintiff's claims against Burlington may not arise out of the same transactions or occurrences as their claims against other defendants, as required for proper joinder of parties.

29

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

### FORTY-FIRST DEFENSE

41.     Plaintiff's claims may be barred, in whole or in part, by the Due Process or Ex Post Facto clauses of the Constitution of the United States or the Constitution of the State of South Carolina.

### FORTY-SECOND DEFENSE

42.     To the extent Plaintiff seeks equitable relief, Plaintiff is not entitled to equitable relief because Plaintiff has an adequate remedy at law and the alleged harm is not irreparable.

### FORTY-THIRD DEFENSE

43.     Plaintiff's claims are barred, in whole or in part, by the free public services doctrine and by the municipal cost recovery doctrine.

### FORTY-FOURTH DEFENSE

44.     Plaintiff's claims are barred to the extent that Plaintiff's alleged damages are speculative, uncertain, and hypothetical.

### FORTY-FIFTH DEFENSE

45.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has suffered no damages.

### FORTY-SIXTH DEFENSE

46.     Plaintiff's damages, if any, may have been the direct and proximate result of facts and circumstances over which Burlington exercises no control.

### FORTY-SEVENTH DEFENSE

47.     Plaintiff's nuisance claims are barred, in whole or in part, because they lack the legal authority or standing to bring a nuisance claim under South Carolina law.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## FORTY-EIGHTH DEFENSE

48.     Plaintiff's private nuisance claim is barred, in whole or in part, because Burlington did not unreasonably interfere with Plaintiff's ownership or possession of land.

## FORTY-NINTH DEFENSE

49.     Plaintiff's private nuisance claim is barred, in whole or in part, because the alleged contamination of a public body of water cannot form the basis of a private nuisance claim.

## FIFTIETH DEFENSE

50.     Plaintiff's public nuisance claim is barred, in whole or in part, because no action of Burlington involved the interference with real or personal property, the alleged public nuisance would have impermissible extraterritorial reach, and the alleged conduct of Burlington is too remote from the alleged injury as a matter of law and due process.

## FIFTY-FIRST DEFENSE

51.     Plaintiff's public nuisance claim fails because Plaintiff is not a private person bringing an action for damages to real or personal property.

## FIFTY-SECOND DEFENSE

52.     Plaintiff's public nuisance claim fails because Plaintiff fails to allege facts showing that Burlington controlled the instrumentality of the alleged nuisance.

## FIFTY-THIRD DEFENSE

53.     Plaintiff's public nuisance claim fails because Plaintiff failed to plead that it suffered a particular damage beyond that which the public has experienced.

## FIFTY-FOURTH DEFENSE

54.     Plaintiff's trespass claim fails because Burlington did not interfere with Plaintiff's right to the exclusive, peaceable possession of its property.

31

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## FIFTY-FIFTH DEFENSE

55.    Plaintiff's trespass claim fails because Plaintiff does not have an exclusive right to the water at issue.

## FIFTY-SIXTH DEFENSE

56.    Plaintiff's trespass claim fails because there was no intentional, unauthorized entry onto Plaintiff's property.

## FIFTY-SEVENTH DEFENSE

57.    Plaintiff's trespass claim fails because PFAS are not tangible substances.

## FIFTY-EIGHTH DEFENSE

58.    Plaintiff's tort-based claims fail because Burlington does not owe Plaintiff a duty under governing law.

## FIFTY-NINTH DEFENSE

59.    Plaintiff's tort-based claims fail because Burlington did not breach any duty allegedly owed to Plaintiff.

## SIXTIETH DEFENSE

60.    Plaintiff's claims for strict liability may be barred because of the principles embodied in Section 402A of the Restatement (Second) of Torts and its comments, to the extent adopted by applicable law.

## SIXTY-FIRST DEFENSE

61.    Plaintiff's products liability claims may be barred, in whole or in part, by the Restatement (Third) of Torts: Products Liability, to the extent adopted by applicable law.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## SIXTY-SECOND DEFENSE

62.     Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff's alleged injuries and damages were caused by the disregard of, or failure to follow and heed, warnings, recommendations, specifications, uses, standards, or instructions provided by Burlington.

## SIXTY-THIRD DEFENSE

63.     Plaintiff cannot obtain relief on its claims based on actions undertaken by Burlington of which Burlington provided adequate notice or warnings.

## SIXTY-FOURTH DEFENSE

64.     Plaintiff's warranty claim may be barred, in whole or in part, to the extent that any warranties were disclaimed and/or are limited by applicable provisions of the UCC.

## SIXTY-FIFTH DEFENSE

65.     Plaintiff's warranty claim may be barred, in whole or in part, because there was no warranty.

## SIXTY-SIXTH DEFENSE

66.     Plaintiff's warranty claim may be barred, in whole or in part, because Plaintiff did not provide Burlington with reasonable notice of any alleged breach and otherwise failed to satisfy all conditions precedent or subsequent to the enforcement of any such warranty.

## SIXTY-SEVENTH DEFENSE

67.     Plaintiff's warranty claim may be barred, in whole or in part, because Plaintiff was not in privity of contract with Burlington and did not rely on any warranty allegedly provided.

## SIXTY-EIGHTH DEFENSE

68.     Plaintiff's warranty claim may be barred, in whole or in part, to the extent any implied warranty was disclaimed.

## SIXTY-NINTH DEFENSE

69.     Plaintiff's claims may be barred, in whole or in part, because Burlington complied at all relevant times with all applicable laws, including all legal and regulatory duties.

## SEVENTIETH DEFENSE

70.     Plaintiff's claims may be barred, reduced, or limited pursuant to the applicable South Carolina statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

## SEVENTY-FIRST DEFENSE

71.     To the extent Plaintiff seeks recovery of attorneys' fees and costs, Plaintiff is not entitled to any attorneys' fees or costs associated with this action because no statute or contract exists that would give Plaintiff the right to recover such fees or costs.

## SEVENTY-SECOND DEFENSE

72.     Burlington adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

## RESERVATION OF RIGHTS

Burlington hereby reserves the right to amend this Answer, raise additional defenses as may be discovered during the course of this litigation and its continuing factual investigations, add cross-claims, or assert third-party claims pursuant to the provisions of the South Carolina Rules of Civil Procedure, the substantive law of South Carolina, and the inherent authority of this Court to manage the procedural aspects of this litigation.

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

WHEREFORE, having fully answered Plaintiff's Complaint, Burlington denies that Plaintiff is entitled to any of the relief requested in the Complaint, and respectfully prays for the dismissal of Plaintiff's Complaint with prejudice and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

s/ Konstantine P. Diamaduros
Andrew A. Mathias (SC Bar No. 76220)
Konstantine P. Diamaduros (SC Bar No. 102231)
Connor B. Bauknight (SC Bar No. 105019)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
AMathias@maynardnexsen.com
KDiamaduros@maynardnexsen.com
CBauknight@maynardnexsen.com

*Attorneys for Defendant Burlington Industries, Inc.*

January 13, 2025
Greenville, South Carolina

ELECTRONICALLY FILED - 2025 Jan 13 9:25 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF FLORENCE ) TWELFTH JUDICIAL CIRCUIT

CITY OF FLORENCE, SOUTH ) C.A. No.: 2024-CP-21-02844
CAROLINA, )

         *Plaintiff,* )

v. ) **ACCEPTANCE OF SERVICE**
) **ON BEHALF OF**
) **BURLINGTON INDUSTRIES, INC.**
BURLINGTON INDUSTRIES, INC., )

         *Defendant.* )
_____ )

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt

via email of the Amended Summons and First Amended Complaint in the above captioned matter

on behalf of Defendant Burlington Industries, Inc., effective this 20th day of December, 2024.

_____
Peter M. McCoy, Jr.
McCoy Law Group, LLC
15 Prioleau Street
Charleston, SC 29401
peter@mccoylawgrp.com

*Receiver for Burlington Industries, Inc.*

ELECTRONICALLY FILED - 2025 Jan 14 5:15 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 14 5:15 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF FLORENCE** | ) | **TWELFTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| CITY OF FLORENCE, SOUTH CAROLINA, | ) | C.A. No.: 2024-CP-21-02844 |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | **ACCEPTANCE OF SERVICE** |
| v. | ) | **ON BEHALF OF** |
| | ) | **BURLINGTON INDUSTRIES, INC.** |
| BURLINGTON INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and First Amended Complaint in the above captioned matter on behalf of Defendant Burlington Industries, Inc., effective this 20th day of December, 2024.

_____
Peter M. McCoy, Jr.
McCoy Law Group, LLC
15 Prioleau Street
Charleston, SC 29401
peter@mccoylawgrp.com

*Receiver for Burlington Industries, Inc.*

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
                           )
COUNTY OF FLORENCE         )    CASE NO: 2024-CP-21-02844
                           )
City of Florence, South Carolina, )
                           )
            Plaintiff,     )    **AFFIDAVIT OF SERVICE**
                           )
vs.                        )
                           )
Aladdin Manufacturing Corporation, )
et. al.,                   )
                           )
            Defendants.    )
_____)

    The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5ᵗʰ Floor, Columbia, SC 29201** on the **23rd day** of **December, 2024,** at **4:10 p.m.**

    The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_____
Debbie Brothers

SWORN TO before me this 27th day
of _December_ ,2024
_McArthur E. Lewis_
Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF FLORENCE | ) | CASE NO: 2024-CP-21-02844 |
| | ) | |
| City of Florence, South Carolina, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Aladdin Manufacturing Corporation, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **23rd day** of **December, 2024, at 4:10 p.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_Debbie Brothers_
Debbie Brothers

SWORN TO before me this _27th_ day of _December_ ,2024

_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: _3-6-2025_

## State of South Carolina
## Office of the Secretary of State
## The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-44-111, we are enclosing herewith a copy
of the Amended Summons; and First Amended Complaint in the above-entitled case.
Service was accepted on December 23, 2024 and a copy has been duly filed in our office
as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# State of South Carolina
# Office of the Secretary of State
# The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens Inc.
P.O. Box 71, 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy
of the Amended Summons; and First Amended Complaint in the above-entitled case.
Service was accepted on December 23, 2024 and a copy has been duly filed in our office
as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

## State of South Carolina
## Office of the Secretary of State
## The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-44-111, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 14 4:18 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**STATE OF SOUTH CAROLINA**

**COUNTY OF SPARTANBURG**

**IN THE COURT OF COMMON PLEAS**

**SEVENTH JUDICIAL CIRCUIT**

Woodruff-Roebuck Water District,

Plaintiff,

v.

AFL Telecommunications, LLC *et al.*,

Defendants.

C.A. No. 2024-CP-42-02480

**STATE OF SOUTH CAROLINA**

**COUNTY OF GREENWOOD**

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

Greenwood Commissioners of Public Works,

Plaintiff,

v.

Cone Mills Receiver, LLC *et al.*,

Defendants.

C.A. No. 2024-CP-24-00735

**STATE OF SOUTH CAROLINA**

**COUNTY OF LAURENS**

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

Laurens County Water and Sewer Commission,

Plaintiff,

v.

Cone Mills Receiver LLC *et al.*,

Defendants.

C.A. No. 2024-CP-30-00734

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF HORRY** | **FIFTEENTH JUDICIAL CIRCUIT** |

Grand Strand Water and Sewer Authority,

              Plaintiff,

v.

Aladdin Manufacturing Corporation *et al.*,

              Defendants.

C.A. No. 2024-CP-26-05523

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF FLORENCE** | **TWELFTH JUDICIAL CIRCUIT** |

City of Florence, South Carolina,

              Plaintiff,

v.

Aladdin Manufacturing Corporation *et al.*,

              Defendants.

C.A. No. 2024-CP-21-02844

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF BERKELEY** | **NINTH JUDICIAL CIRCUIT** |

South Carolina Public Service Authority, a/k/a Santee Cooper, an agency of the State of South Carolina,

              Plaintiff,

v.

China Jushi USA Corporation *et al.*,

              Defendants.

C.A. No. 2024-CP-08-03336

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

**STATE OF SOUTH CAROLINA**

**COUNTY OF UNION**

**IN THE COURT OF COMMON PLEAS**

**SIXTEENTH JUDICIAL CIRCUIT**

City of Union, South Carolina,

Plaintiff,

v.

Milliken & Company *et al.*,

Defendants.

C.A. No. 2024-CP-44-00558

**STATE OF SOUTH CAROLINA**

**COUNTY OF LAURENS**

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

City of Clinton, South Carolina,

Plaintiff,

v.

Fibertex Nonwovens, Inc. *et al.*,

Defendants.

C.A. No. 2025-CP-30-00005

**PLAINTIFFS' STATUS CONFERENCE STATEMENT**

Plaintiffs in this consolidated litigation[1] are local and regional public utilities and water authorities who share a common challenge: the contamination of their water sources and properties with certain perfluoroalkyl substances ("PFAS").

---

[1] The undersigned represent Plaintiffs Woodruff-Roebuck Water District; Greenwood Commissioners of Public Works; Laurens County Water and Sewer Commission; Grand Strand Water and Sewer Authority; City of Florence, South Carolina; South Carolina Public Service Authority (Santee Cooper); City of Union, South Carolina; and City of Clinton, South Carolina. Pursuant to the Supreme Court's consolidation order, this litigation also includes additional local public utilities and water authorities.

The Environmental Protection Agency's recent publications mark a significant advancement in the scientific understanding of PFAS toxicity. While the EPA previously advised that PFOA and PFOS—the two most studied PFAS compounds—could be safely consumed at levels of up to 70 parts per trillion ("ppt") over a lifetime, the agency now makes clear that **no safe level exists** for consuming these chemicals. Building on this understanding, the EPA has enacted maximum contaminant levels under the Safe Drinking Water Act for PFOA, PFOS, and four additional PFAS types ("MCL PFAS"). These regulations prohibit water authorities from delivering drinking water containing MCL PFAS concentrations above these newly defined thresholds, with enforcement to begin in 2029.

However, like the vast majority of water providers, Plaintiffs rely on conventional water treatment technologies that are unable to remove PFAS. And MCL PFAS, including PFOA and PFOS, currently contaminate their drinking water, which leaves Plaintiffs' treatment plants at levels above the EPA limits. Not only does the PFAS contamination pose an obstacle to Plaintiffs' legal compliance and injure Plaintiffs' property interests—according to the EPA, it directly threatens public health and the environment. Indeed, even if Plaintiffs were subject to no regulation, the EPA's stance alone compels that Plaintiffs act to protect their own interests and those of their customers and communities.

Plaintiffs serve cities and counties across the state, providing water to over 800,000 residences and businesses. When accounting for spouses, children, employees, tenants, patients, and other individuals in these communities, the PFAS contamination problem in Plaintiffs' water supplies impacts **well over a million South Carolina residents**—approaching or exceeding 25% of the state's population.

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

The contamination spreads through South Carolina's rivers, lakes, and streams—surface waters that Plaintiffs are authorized to withdraw, treat, and provide to customers. It is largely driven by private industries that utilize MCL PFAS in their manufacturing processes, generating PFAS-laden wastewater. These industries discharge wastewater into local treatment plants, which process and release it into the same surface waters that Plaintiffs rely on for drinking water. Unfortunately, as at Plaintiffs' water facilities, PFAS bypass the conventional treatment systems used by wastewater treatment plants and flow unhindered into the state's surface waters. These contaminated waters then pass through Plaintiffs' water plants just as easily and into homes and businesses across the state.

Plaintiffs commenced this litigation not only to protect their own rights, but also because the PFAS contamination presents a critical public health and infrastructural challenge—a burden that neither Plaintiffs nor their customers can, or should, bear alone. Plaintiffs' surface water treatment plants require upgraded treatment technologies to provide PFAS-free water. And Plaintiffs believe that the financial burden of these upgrades should not fall on their drinking water customers and communities, who bear no responsibility for this contamination. Instead, those who caused and profited from the contamination must be held accountable to ensure this crisis is justly resolved. Plaintiffs are seeking to do so both comprehensively and urgently.

Plaintiffs have named numerous industries as defendants due to their alleged discharge of PFAS-contaminated wastewater, either directly to South Carolina surface waters or indirectly through their applicable wastewater treatment providers. Plaintiffs also anticipate adding as defendants the chemical suppliers of PFAS-discharging defendants upon receiving discovery revealing their identities. Thus, Plaintiffs anticipate that the number of parties and scope of discovery in this litigation will be significant.

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Discovery topics will include:

- The identities of the suppliers of products containing or degrading to MCL PFAS used by Defendants;

- The type and volume of PFAS-containing products supplied to and used by Defendants;

- The industrial processes employed by Defendants who use these products and cause their discharge;

- The chemical composition of the products at issue, including the mechanisms by which the MCL PFAS are present in the products;

- The fate and transport of these products—i.e., the means by which they are used, disposed of, and eventually reach surface waters, Plaintiffs' water sources, and Plaintiffs' properties;

- Defendants' historical knowledge of the chemical properties of, and the environmental and health risks posed by, these products; and

- Instructions, if any, from Defendants' chemical suppliers as to the nature of these products and their proper disposal.

Based on the experience of Plaintiffs' counsel in litigating PFAS cases involving complex topics of chemistry, industry history, and fate and transport, Plaintiffs believe that this discovery will require extensive document production, witness testimony from officers and employees of Plaintiffs and all Defendants, and property inspections.

The volume of complex matters in this case presents unique challenges in organizing and managing recurring issues—both in discovery and in substantive litigation.

Plaintiffs, therefore, make the following recommendations:

1. *Appointment of Leadership*. Leadership counsel will provide the Court with the means for efficiently contacting all parties in each case for scheduling matters, and it will aid the parties in informally resolving issues that require consent or agreement among the parties.

2. *Consolidated Case Number*. A consolidated case number provides a centralized docket for all filings concerning consolidated matters.

3. *Initial Disclosures*. Core discovery topics applicable to all cases can be covered at the outset in each case, including the following:

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

  a. Sales records of products containing MCL PFAS;

  b. Identification of suppliers of MCL PFAS;

  c. Applicable insurance policies;

  d. The analytical results of any PFAS testing conducted by the responding party;

  e. Previous depositions in other cases by any party concerning PFAS; and

  f. Identification of experts.

4. *Discovery Protocols.* Standard discovery protocols inform the parties of this Court's expectations in how to approach matters that can otherwise cause delay, such as disputes and scheduling difficulties. Protocols should cover matters such as:

  a. Objections to written discovery, including the prohibition of both boilerplate and general objections, and requiring clarity as to whether the responding party is withholding responsive information based on an objection;

  b. Special interrogatories;

  c. Property inspection procedures, including scheduling and setting protocols for PFAS-sampling methods and parameters;

  d. Standard procedures for resolving discovery disputes, including meet and confer processes and resolution with the Court;

  e. Privilege logs;

  f. Document requests made to Plaintiffs via the Freedom of Information Act;

  g. Subpoenas;

  h. Production of documents and electronically stored information;

  i. Deposition scheduling and conduct; and

  j. Protective orders, including confidentiality designations for documents and testimony produced in discovery.

5. *Periodic Conferences before the Court.* Regular conferences before this Court will aid efficiencies in many ways, including dispute resolution and maintaining discovery scheduling.

6. *Consolidated Briefing.* Except for motions involving facts unique to a particular Defendant, consolidated briefing will prevent frequent repetition and bloat from overburdening the parties and the Court, while maintaining full and fair representation of the parties' views on the facts and their legal arguments.

7. *Setting Trial Dates.* Firm trial dates aid all parties in completing discovery and readying the case for resolution. Plaintiffs recommend January 2027.

Due to the volume of parties and factual complexities in these cases, Plaintiffs believe that a Case Management Order streamlining these matters as outlined above will significantly contribute to resolving this case in the most efficient and timely manner possible.

Respectfully submitted,

 */s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiffs*

January 17, 2025

ELECTRONICALLY FILED - 2025 Jan 17 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 22 2:46 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA

COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS

FOR THE TWELFTH JUDICIAL CIRCUIT

| | |
|---|---|
| CITY OF FLORENCE, SOUTH CAROLINA, <br><br> *Plaintiff*, <br><br> v. <br><br> ALADDIN MANUFACTURING CORPORATION; AMERICHEM, INC.; AURIA ALBEMARLE, LLC; AURIA SOLUTIONS USA, INC.; BFI WASTE SYSTEMS OF NORTH AMERICA, LLC; BURLINGTON INDUSTRIES, INC.; CARVANA, LLC; CASCADES HOLDING US, INC.; DELTA MILLS, INC., its predecessors, successors, assigns, and/or responsible parties; DOMTAR PAPER COMPANY, LLC; ELEVATE TEXTILES, INC.; HEIQ CHEMTEX, INC.; J.P. STEVENS & COMPANY, INC., its predecessors, successors, assigns, and/or responsible parties; MARCAL CORDOVA LLC; MOHAWK INDUSTRIES, INC.; REPUBLIC SERVICES, INC.; WASTE CONNECTIONS, INC.; and WASTE CONNECTIONS OF NORTH CAROLINA, INC., <br><br> *Defendants*. | C.A. No. 2024-CP-21-02844 <br><br> **ACCEPTANCE OF SERVICE ON BEHALF OF DOMTAR PAPER COMPANY, LLC** |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and First Amended Complaint in the above captioned matter on behalf of Defendant Domtar Paper Company, LLC ("Domtar"), effective this 9th day of January, 2025, with no further service on Domtar being necessary.

Matthew J. Lund (P48632)
Troutman Pepper Locke LLP
4000 Town Center, Ste. 1800
Southfield, MI 48075 / (248) 359-7370
Matthew.lund@troutman.com
*Counsel for Domtar Paper Company, LLC*
Dated:  January 17, 2025

ELECTRONICALLY FILED - 2025 Jan 24 10:48 AM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF SPARTANBURG | ) ) ) ) | IN THE COURT OF COMMON PLEAS |
| IN RE: | ) ) ) | NOTICE<br>OF STATUS CONFERENCE |
| PFAS LITIGATION<br>COORDINATED DOCKET | ) ) ) ) ) ) | |

A status conference has been set in the PFAS Litigation cases for 11:00 a.m. on Friday, January 24, 2025, at the Spartanburg County Courthouse in Courtroom 6D and will be on Judge Knie's virtual courtroom.

Counsel has been notified via electronic mail.

IT IS SO ORDERED at Spartanburg, South Carolina this 23rd day of January, 2025.

_____
Honorable Grace Gilchrist Knie
Circuit Judge
S.C. PFAS Litigation

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

### RE:  PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary.  Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases.  Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings.  Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes.  At the conclusion of all pretrial matters, any party may move to have

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

RE: Local PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts (Local PFAS Litigation) currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the Local PFAS Litigation cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the Local PFAS Litigation and may schedule such hearings as may be necessary at any time without regard to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving Local PFAS Litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the Local PFAS Litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all Local PFAS Litigation cases.

This order supersedes the PFAS Litigation Order dated August 14, 2024, and shall remain in effect until amended or rescinded by the Chief Justice.

John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
October __7__, 2024

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

RE: PFAS Litigation

## ORDER

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# The Supreme Court of South Carolina

RE:  Local PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts (Local PFAS Litigation) currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary.  Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases.  Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the Local PFAS Litigation cases filed in the state court system.  Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the Local PFAS Litigation and may schedule such hearings as may be necessary at any time without regard to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving Local PFAS Litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days.  This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings.  Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the Local PFAS Litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all Local PFAS Litigation cases.

This order supersedes the PFAS Litigation Order dated August 14, 2024, and shall remain in effect until amended or rescinded by the Chief Justice.

_____
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
October __7__, 2024

ELECTRONICALLY FILED - 2025 Jan 24 1:51 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**REQUEST FOR ENTRY OF DEFAULT AS TO DEFENDANT DELTA MILLS, INC.**

Pursuant to Rule 55(a), SCRCP, the undersigned, as counsel for Plaintiff City of Florence, South Carolina ("Plaintiff"), respectfully requests that the Clerk of Court make an entry of default against Defendant Delta Mills, Inc. ("Delta Mills"). This request is based on the Affidavit of Default attached hereto as Exhibit 1. The Affidavit of Default establishes that Plaintiff served Delta Mills with the Amended Summons and Complaint in this action on December 23, 2024, by serving the South Carolina Secretary of State's Office. Delta Mills has not answered or otherwise appeared in this action, and Delta Mills' answer to the Amended Complaint was due on or before January 27, 2025. *See* Rule 12(a), SCRCP. Because Delta Mills has failed to plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, Delta Mills is in default, and Plaintiff respectfully requests the entry of default against Delta Mills.

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

January 30, 2025

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-21-02844

**AFFIDAVIT OF DEFAULT AS TO
DEFENDANT DELTA MILLS, INC.**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and I am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff City of Florence, South Carolina ("Plaintiff") in the above-captioned action.

2.      On December 23, 2024, Plaintiff served Defendant Delta Mills, Inc. with the Amended Summons and Complaint in this action pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the South Carolina Secretary of State's Office via process server.[1]

3.      Defendant Delta Mills, Inc.'s answer to the Amended Complaint was due on January 27, 2025, but Delta Mills, Inc. has not answered or otherwise appeared in this action.

4.      Defendant Delta Mills, Inc. is not a minor, incompetent, or member of the military service.

---

[1] *See* Correspondence and Affidavit of Service, attached as Exhibit A.

5.     Defendant Delta Mills, Inc. is now in default.

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 30th day of __January__, 2025

_____
Notary Public, State of South Carolina

My Commission Expires: __4/28/32__

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# State of South Carolina
## Office of the Secretary of State
### The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-217█
sos.sc.go█

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-44-111, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 30 5:27 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF FLORENCE ) CASE NO: 2024-CP-21-02844

City of Florence, South Carolina, )

Plaintiff, ) **AFFIDAVIT OF SERVICE**

vs. )

Aladdin Manufacturing Corporation, ) et. al., )

Defendants. )

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **23rd day** of **December, 2024,** at **4:10 p.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

Debbie Brothers

SWORN TO before me this 27th day
of December ,2024

Notary Public for S.C.
My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**REQUEST FOR ENTRY OF DEFAULT AS TO DEFENDANT J.P. STEVENS & COMPANY, INC.**

Pursuant to Rule 55(a), SCRCP, the undersigned, as counsel for Plaintiff City of Florence, South Carolina ("Plaintiff"), respectfully requests that the Clerk of Court make an entry of default against Defendant J.P. Stevens & Company, Inc. ("JPS"). This request is based on the Affidavit of Default attached hereto as Exhibit 1. The Affidavit of Default establishes that Plaintiff served JPS with the Amended Summons and Complaint in this action on December 23, 2024, by serving the South Carolina Secretary of State's Office. JPS has not answered or otherwise appeared in this action, and JPS' answer to the Amended Complaint was due on or before January 27, 2025. *See* Rule 12(a), SCRCP. Because JPS has failed to plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, JPS is in default, and Plaintiff respectfully requests the entry of default against JPS.

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

January 30, 2025

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

2

# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

---

City of Florence, South Carolina,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-21-02844

**AFFIDAVIT OF DEFAULT AS TO DEFENDANT J.P. STEVENS & COMPANY, INC.**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and I am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff City of Florence, South Carolina ("Plaintiff") in the above-captioned action.

2.      On December 23, 2024, Plaintiff served Defendant J.P. Stevens & Company, Inc. ("JPS") with the Amended Summons and Complaint in this action pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the South Carolina Secretary of State's Office via process server.[1]

3.      Defendant JPS's answer to the Amended Complaint was due on January 27, 2025, but JPS has not answered or otherwise appeared in this action.

4.      Defendant JPS is not a minor, incompetent, or member of the military service.

5.      Defendant JPS is now in default.

---

[1] *See* Correspondence and Affidavit of Service, attached as Exhibit A.

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 30th day of January , 2025

Notary Public, State of South Carolina

My Commission Expires: 2/28/32

2

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# State of South Carolina
# Office of the Secretary of State
# The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens Inc.
P.O. Box 71, 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 30 5:38 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF FLORENCE | ) | CASE NO: 2024-CP-21-02844 |
| | ) | |
| City of Florence, South Carolina, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF SERVICE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Aladdin Manufacturing Corporation, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **23rd day of December, 2024, at 4:10 p.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_Debbie Brothers_
Debbie Brothers

SWORN TO before me this _27th_ day
of _December_ ,2024

_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: _3-6 2025_

ELECTRONICALLY FILED - 2025 Jan 31 12:58 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**ENTRY OF DEFAULT AS TO
DELTA MILLS, INC.**

IT APPEARING to me from the file book, the file in this case, and the affidavit of counsel for the Plaintiff, City of Florence, South Carolina, that Defendant Delta Mills, Inc. has failed to timely plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, I hereby, pursuant to Rule 55(a), SCRCP, make this entry of default as to Defendant Delta Mills, Inc.

AND IT IS SO ENTERED.

_____
Florence County Clerk of Court

1



Florence Common Pleas

**Case Caption:**     Florence City Of South Carolina VS   Burlington Industries Inc ,
defendant, et al

**Case Number:**     2024CP2102844

**Type:**     Order/Entry of Default


H. Steven DeBerry, IV

Circuit Court Judge 2771


Electronically signed on 2025-01-31 11:50:44     page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 31 12:58 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 12:57 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**ENTRY OF DEFAULT AS TO J.P. STEVENS & COMPANY, INC.**

IT APPEARING to me from the file book, the file in this case, and the affidavit of counsel for the Plaintiff, City of Florence, South Carolina, that Defendant J.P. Stevens & Company, Inc. has failed to timely plead or otherwise defend as provided by the South Carolina Rules of Civil Procedure, I hereby, pursuant to Rule 55(a), SCRCP, make this entry of default as to Defendant J.P. Stevens & Company, Inc.

AND IT IS SO ENTERED.

_____
Florence County Clerk of Court

1



Florence Common Pleas

**Case Caption:**    Florence City Of South Carolina VS   Burlington Industries Inc ,
                     defendant, et al

**Case Number:**    2024CP2102844

**Type:**           Order/Entry of Default

H. Steven DeBerry, IV

Circuit Court Judge 2771

Electronically signed on 2025-01-31 11:50:29    page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 31 12:57 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**PLAINTIFF'S MOTION TO APPOINT A RECEIVER OVER DEFENDANT DELTA MILLS, INC.**

Plaintiff, City of Florence, South Carolina, hereby moves for the appointment of a receiver over Defendant Delta Mills, Inc. For the following reasons, Plaintiff respectfully submits that the Court should appoint a receiver over Defendant Delta Mills, Inc. pursuant to section 15-65-10(4) of the South Carolina Code.

**Background**

Defendant Delta Mills, Inc. was a Delaware corporation that was registered to transact business in South Carolina until September 17, 2009. Before its dissolution, Delta Mills and its related entities (collectively, "Delta Mills") operated a number of textile mills and/or plants in South Carolina, including facilities in Wallace and Pamplico. Over the course of its facility operations, Delta Mills used products containing toxic per- and polyfluoroalkyl substances ("PFAS") in the finishing of its textile products, and Delta Mills discharged its PFAS-contaminated industrial wastewater to South Carolina waterways.

Delta Mills' business activities at the facility in Wallace contaminated the Great Pee Dee River upstream of Plaintiff's water intake. Further, Delta Mills did not remediate the PFAS

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

contamination at this facility when it ceased operations in 2006, and its legacy PFAS contamination has caused and continues to cause harm to Plaintiff. As set forth in the Amended Complaint, Plaintiff is a municipal corporation that provides potable water to its customers, and Plaintiff will be required to design, construct, and operate new water treatment technologies to remove PFAS contamination and provide drinking water free from PFAS. Plaintiff asserts causes of action against Delta Mills (and other upstream dischargers) for private nuisance, public nuisance, trespass, and negligence, gross negligence, and/or recklessness.

## Argument

Under South Carolina law, "a judge of the circuit court" may appoint a receiver "[w]hen a corporation has been dissolved, is insolvent or in imminent danger of insolvency or has forfeited its corporate rights, and, in like cases of the property within this State of foreign corporations." S.C. Code Ann. § 15-65-10(4). The decision to appoint a receiver is discretionary with the appointing judge. *Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989). "A receiver represents the court appointing him. He is an officer of the court and is the agency through which the court acts." *Jeffcoat v. Morris*, 300 S.C. 526, 528, 389 S.E.2d 159, 160 (Ct. App. 1989), *overruled on other grounds by United Carolina Bank v. Caroprop*, 316 S.C. 1, 446 S.E.2d 415 (1994). Before a party's property may be put in the hands of a receiver, "[a]t least four days' notice of the application must be given, unless the court shall, upon it being made to appear that delay would work injustice, prescribe a shorter time." S.C. Code Ann. § 15-65-20.

This Court—which has exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases and all pretrial matters arising therefrom[1]—should appoint a receiver over Delta

---

[1] *RE: Local PFAS Litigation*, S.C. Sup. Ct. Order dated Oct. 7, 2024.

2

Mills because it is dissolved and has forfeited its right to conduct business in South Carolina.[2] Before withdrawing from the State and dissolving, however, Delta Mills engaged in tortious conduct causing harm to Plaintiff (and likely others), as alleged in Plaintiff's Amended Complaint. Additionally, Plaintiff properly served the Amended Summons and Complaint on Delta Mills through the South Carolina Secretary of State,[3] *see* S.C. Code Ann. § 33-15-200(c), and Delta Mills has not answered and is currently in default. Consistent with section 15-65-20, Plaintiff is providing notice of this Motion to Delta Mills by serving copies on the South Carolina Secretary of State.

Plaintiff respectfully requests that this Court enter an order appointing Peter D. Protopapas as the Receiver over Delta Mills. Mr. Protopapas has extensive experience acting as the receiver over dissolved or defunct entities such as Delta Mills. As an officer of the Court, the Receiver can determine whether Delta Mills has any assets (including, for example, insurance coverage), and he should be granted the authority to, among other things, accept service of claims, retain counsel, make claims against any insurance policies, and marshal and administer Delta Mills' assets.

### Conclusion

For the foregoing reasons, Plaintiff respectfully submits that the appointment of a receiver over Delta Mills is appropriate, and the receiver should be granted the power and authority to fully administer Delta Mills' assets, accept service and engage counsel on its behalf, and take any and all steps necessary to protect the interests of Delta Mills, whatever they may be. Plaintiff further respectfully submits that the Court should appoint Peter D. Protopapas as receiver over Delta Mills, and requests that the Court issue an order appointing a receiver as soon as practically possible.

---

[2] *See* Aff., Ex. A.
[3] *See* Aff., Ex. B.

3

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

F. Jerome Tapley*
Hirlye Ryan Lutz, III*
Brett Cooper Thompson*
Robert Akira Watson*
Hannah Caldwell*
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328-2200
jtapley@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com
awatson@corywatson.com
hcaldwell@corywatson.com
*admitted pro hac vice*

*Attorneys for Plaintiff*

January 31, 2025

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT- AFFIDAVIT

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-21-02844

**AFFIDAVIT OF MARGHRETTA H. SHISKO**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff City of Florence, South Carolina ("Plaintiff") in the above-captioned action.

2.      Defendant Delta Mills, Inc. is a dissolved foreign corporation that was formerly registered to transact business in the State of South Carolina. Delta Mills, Inc. dissolved effective September 17, 2009, after applying for and obtaining a certificate of withdrawal from the SC Secretary of State pursuant to section 33-15-200 of the South Carolina Code.[1] In its application, Delta Mills, Inc.: (1) revoked the authority of its South Carolina registered agent to accept service of process; (2) appointed the SC Secretary of State as its agent for service of process in actions based on a cause of action that arose from its transaction of business in the State; (3) provided a

---

[1] *See* Application for Surrender of Authority to Do Business in the State of South Carolina, attached as Exhibit A.

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

mailing address for the Secretary of State to forward any process against the corporation served on him; and (4) agreed to notify the Secretary of State of any future changes in its mailing address. *See* § 33-15-200(b).

3.     Plaintiff served Defendant Delta Mills, Inc. with the Amended Summons and Complaint in this action on December 23, 2024, pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the SC Secretary of State's Office via process server.[2]

4.     Defendant Delta Mills, Inc.'s Answer to the Amended Complaint was due on January 27, 2025, but Delta Mills, Inc. has not answered or otherwise appeared in this action. Pursuant to Rule 55(a), SCRCP, Plaintiff filed a Request for Entry of Default as to Defendant Delta Mills, Inc. on January 30, 2025.

5.     Plaintiff is filing a Motion to Appoint a Receiver over Delta Mills, Inc., pursuant to section 15-65-10(4) of the South Carolina Code, and is providing notice of the Motion by serving copies of the same on Defendant Delta Mills, Inc. through the SC Secretary of State's Office pursuant to sections 33-15-200(c) and 15-65-20 of the South Carolina Code.

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 31st day of January , 2025

_____
Notary Public, State of South Carolina
My Commission Expires: 2/28/32

_____
[2] *See* Correspondence and Affidavit of Service, attached as Exhibit B.

2

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

CERTIFIED TO BE A TRUE AND CORRECT COPY
AS TAKEN FROM AND COMPARED WITH THE
ORIGINAL ON FILE IN THIS OFFICE

Nov 07 2024
REFERENCE ID: 1749836

*Mark Hammond*
SECRETARY OF STATE OF SOUTH CAROLINA

**STATE OF SOUTH CAROLINA**
**SECRETARY OF STATE**

## APPLICATION FOR SURRENDER OF AUTHORITY TO DO BUSINESS IN THE STATE OF SOUTH CAROLINA

**TYPE OR PRINT CLEARLY IN BLACK INK**

Pursuant to S C Code § 33 15 200 the undersigned corporation hereby applies to the Secretary of State for surrender of authority to do business in the State of South Carolina and for that purpose submits the following statement

1    The name of the corporation is _____ DELTA MILLS INC _____

2    The corporation is incorporated under the laws of the state of _____ DELAWARE _____

3    The corporation received a certificate of authorization to transact business in South Carolina dated _____ 07/16/1993 _____

4    The corporation is no longer transacting business in South Carolina

5    The corporation hereby surrenders its authority to transact business in the State of South Carolina

6    The corporation revokes the authority of its registered agent in South Carolina to accept service of process and consents that process in any action suit or proceeding based upon any cause of action arising in this State before the effective date of this application may be served on the Secretary of State

7    The address to which the Secretary of State may mail a copy of any process against the corporation that may be served on him is _____ C/O MESIROW FINANCIAL CONSULTING LLC _____
265 FRANKLIN ST 16TH FLOOR BOSTON MA 02110

The corporation hereby agrees to notify the Secretary of State of any change in this mailing address

8    Unless a delayed date is specified this application shall be effective upon acceptance for filing by the Secretary of State (See sections 33 1 230(b)) _____

Date _____ 9/15/09 _____

DELTA MILLS, INC
Name of Corporation

_____ Signature

LEON SZLEZINGER, CHIEF DESIGNATED OFFICER
Type or Print Name and Office

### FILING INSTRUCTIONS

1    Two copies of this application the original and either a duplicate original or a conformed copy must be filed

2    Filing Fee (payable at the time of filing this document) $10 00

Return to Secretary of State
PO Box 11350
Columbia SC 29211

FRN APP FOR SURRENDER OF AUTHORITY doc

090917-0128        **FILED 09/17/2009**
DELTA MILLS INC

Filing Fee $10 00 ORIG



Mark Hammond        South Carolina Secretary of State

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

# EXHIBIT B

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844



# State of South Carolina
## Office of the Secretary of State
### The Honorable Mark Hammond

1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-217█
sos.sc.go█

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Delta Mills, Inc.
c/o Mesirow Financial Consulting LLC
265 Franklin St., 16th Floor
Boston, MA 02110

RE: Delta Mills, Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-44-111, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

*Allyson Green*

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:    John B. White Jr., P.A.
       John B. White, Jr.
       291 South Pine Street P.O. Box 2465
       Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 1:53 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA   )   IN THE COURT OF COMMON PLEAS

                        )

COUNTY OF FLORENCE        )   CASE NO: 2024-CP-21-02844

                        )

City of Florence, South Carolina,   )

                        )

        Plaintiff,     )   **AFFIDAVIT OF SERVICE**

                        )

vs.                       )

                        )

Aladdin Manufacturing Corporation, )

et. al.,                   )

                        )

        Defendants.   )

                        )

The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **DELTA MILLS, INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **23rd day** of **December, 2024,** at **4:10 p.m.**

The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

_Debbie Brothers_

Debbie Brothers

SWORN TO before me this 27th day

of _December_ ,2024

_McArthur E. Lewis_

Notary Public for S.C. 2025

My Commission Expires: 3-6-2025

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff*,

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants*.

C.A. No. 2024-CP-21-02844

**PLAINTIFF'S MOTION TO APPOINT A RECEIVER OVER DEFENDANT J.P. STEVENS & COMPANY, INC.**

Plaintiff, City of Florence, South Carolina, hereby moves for the appointment of a receiver over Defendant J.P. Stevens & Company, Inc. For the following reasons, Plaintiff respectfully submits that the Court should appoint a receiver over Defendant J.P. Stevens & Company, Inc. pursuant to section 15-65-10(4) of the South Carolina Code.

**Background**

Defendant J.P. Stevens & Company, Inc. was a Delaware corporation that was registered to transact business in South Carolina until August 30, 1999. Before its dissolution, J.P. Stevens & Company, Inc. and its related entities (collectively, "JPS") operated a number of textile mills and/or plants in South Carolina, including a textile finishing facility in Wallace, South Carolina, which JPS subsequently sold to Delta Mills, Inc. (or a related entity) in or around 1987. Over the course of its facility operations, JPS used products containing toxic per- and polyfluoroalkyl substances ("PFAS") in the finishing of its textile products, and JPS discharged its PFAS-contaminated industrial wastewater to South Carolina waterways.

JPS's business activities at the facility in Wallace contaminated the Great Pee Dee River upstream of Plaintiff's water intake. Further, JPS did not remediate the PFAS contamination at this facility when it ceased operations and transferred the facility, and its legacy PFAS contamination has caused and continues to cause harm to Plaintiff. As set forth in the Amended Complaint, Plaintiff is a municipal corporation that provides potable water to its customers, and Plaintiff will be required to design, construct, and operate new water treatment technologies to remove PFAS contamination and provide drinking water free from PFAS. Plaintiff asserts causes of action against JPS (and other upstream dischargers) for private nuisance, public nuisance, trespass, and negligence, gross negligence, and/or recklessness.

### Argument

Under South Carolina law, "a judge of the circuit court" may appoint a receiver "[w]hen a corporation has been dissolved, is insolvent or in imminent danger insolvency or has forfeited its corporate rights, and, in like cases of the property within this State of foreign corporations." S.C. Code Ann. § 15-65-10(4). The decision to appoint a receiver is discretionary with the appointing judge. *Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989). "A receiver represents the court appointing him. He is an officer of the court and is the agency through which the court acts." *Jeffcoat v. Morris*, 300 S.C. 526, 528, 389 S.E.2d 159, 160 (Ct. App. 1989), *overruled on other grounds by United Carolina Bank v. Caroprop*, 316 S.C. 1, 446 S.E.2d 415 (1994). Before a party's property may be put in the hands of a receiver, "[a]t least four days' notice of the application must be given, unless the court shall, upon it being made to appear that delay would work injustice, prescribe a shorter time." S.C. Code Ann. § 15-65-20.

2

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

This Court—which has exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases and all pretrial matters arising therefrom[1]—should appoint a receiver over JPS because it is dissolved and has forfeited its right to conduct business in South Carolina.[2] Before withdrawing from the State and dissolving, however, JPS engaged in tortious conduct causing harm to Plaintiff (and likely others), as alleged in Plaintiff's Amended Complaint. Additionally, Plaintiff properly served the Amended Summons and Complaint on JPS through the South Carolina Secretary of State,[3] *see* S.C. Code Ann. § 33-15-200(c), and JPS has not answered and is currently in default. Consistent with section 15-65-20, Plaintiff is providing notice of this Motion to JPS by serving copies on the South Carolina Secretary of State.

Plaintiff respectfully requests that this Court enter an order appointing Peter D. Protopapas as the Receiver over JPS. Mr. Protopapas has extensive experience acting as the receiver over dissolved or defunct entities such as JPS. As an officer of the Court, the Receiver can determine whether JPS has any assets (including, for example, insurance coverage), and he should be granted the authority to, among other things, accept service of claims, retain counsel, make claims against any insurance policies, and marshal and administer JPS's assets.

### Conclusion

For the foregoing reasons, Plaintiff respectfully submits that the appointment of a receiver over JPS is appropriate, and the receiver should be granted the power and authority to fully administer JPS's assets, accept service and engage counsel on its behalf, and take any and all steps necessary to protect the interests of JPS, whatever they may be. Plaintiff further respectfully

---

[1] *RE: Local PFAS Litigation*, S.C. Sup. Ct. Order dated Oct. 7, 2024.
[2] *See* Aff., Ex. A.
[3] *See* Aff., Ex. B.

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

submits that the Court should appoint Peter D. Protopapas as receiver over JPS, and requests that

the Court issue an order appointing a receiver as soon as practically possible.

Respectfully submitted,

*/s/ Marghretta H. Shisko*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

F. Jerome Tapley*
Hirlye Ryan Lutz, III*
Brett Cooper Thompson*
Robert Akira Watson*
Hannah Caldwell*
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328-2200
jtapley@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com
awatson@corywatson.com
hcaldwell@corywatson.com
*admitted pro hac vice*

*Attorneys for Plaintiff*

January 31, 2025

4

# EXHIBIT -AFFIDAVIT

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA
COUNTY OF FLORENCE

IN THE COURT OF COMMON PLEAS
FOR THE TWELFTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

City of Florence, South Carolina,

*Plaintiff,*

v.

Aladdin Manufacturing Corporation, et al.,

*Defendants.*

C.A. No. 2024-CP-21-02844

**AFFIDAVIT OF MARGHRETTA H. SHISKO**

Personally appeared before me, Marghretta H. Shisko, who, after first being duly sworn, states as follows:

1.      My name is Marghretta H. Shisko. I am over the age of 18 and am competent to provide this affidavit. I am an attorney licensed to practice in the State of South Carolina, and I am counsel for Plaintiff City of Florence, South Carolina ("Plaintiff") in the above-captioned action.

2.      Defendant J.P. Stevens & Co., Inc. is a dissolved foreign corporation that was formerly registered to transact business in the State of South Carolina. J.P. Stevens & Co., Inc. dissolved effective August 30, 1999, after applying for and obtaining a certificate of withdrawal from the SC Secretary of State pursuant to section 33-15-200 of the South Carolina Code.[1] In its application, J.P. Stevens & Co., Inc.: (1) revoked the authority of its South Carolina registered agent to accept service of process; (2) appointed the SC Secretary of State as its agent for service of process in actions based on a cause of action that arose from its transaction of business in the

_____

[1] *See* Application for Surrender of Authority to Do Business in the State of South Carolina, attached as Exhibit A.

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

State; (3) provided a mailing address for the Secretary of State to forward any process against the corporation served on him; and (4) agreed to notify the Secretary of State of any future changes in its mailing address. *See* § 33-15-200(b).

3.      Plaintiff served Defendant J.P. Stevens & Co., Inc. with the Amended Summons and Complaint in this action on December 23, 2024, pursuant to section 33-15-200(c) of the South Carolina Code and Rule 4(d)(7), SCRCP, by serving copies of the same on the SC Secretary of State's Office via process server.[2]

4.      Defendant J.P. Stevens & Co., Inc.'s Answer to the Amended Complaint was due on January 27, 2025, but J.P. Stevens & Co., Inc. has not answered or otherwise appeared in this action. Pursuant to Rule 55(a), SCRCP, Plaintiff filed a Request for Entry of Default as to Defendant J.P. Stevens & Company, Inc. on January 30, 2025.

5.      Plaintiff is filing a Motion to Appoint a Receiver over J.P. Stevens & Co., Inc. pursuant to section 15-65-10(4) of the South Carolina Code and is providing notice of the Motion by serving copies of the same on Defendant J.P. Stevens & Co., Inc. through the SC Secretary of State's Office pursuant to sections 33-15-200(c) and 15-65-20 of the South Carolina Code.

_____
Marghretta H. Shisko

SWORN AND SUBSCRIBED TO BEFORE

ME this 31st day of January, 2025

_____
Notary Public, State of South Carolina

My Commission Expires: 4/28/32

---

[2] *See* Correspondence and Affidavit of Service, attached as Exhibit B.

2

# EXHIBIT A

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

CERTIFIED TO BE A TRUE AND CORRECT COPY
AS TAKEN FROM AND COMPARED WITH THE
ORIGINAL ON FILE IN THIS OFFICE

Nov 07 2024
REFERENCE ID: 1749860

*Mark Hammond*
SECRETARY OF STATE OF SOUTH CAROLINA

## STATE OF SOUTH CAROLINA
## SECRETARY OF STATE

## APPLICATION FOR SURRENDER OF AUTHORITY TO DO BUSINESS IN THE STATE OF SOUTH CAROLINA



*Jim Miles*
SECRETARY OF STATE
**FILED**
AM AUG 3 0 1999 PM
7 8 9 10 11 12 1 2 3 4 5 6

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

Pursuant to the provisions of the 1976 South Carolina Code, as amended, the undersigned corporation hereby applies to the Secretary of State for surrender of authority to do business in the State of South Carolina, and for that purpose submits the following statement:

1.  The name of the corporation is  J.P. Stevens & Co., Inc.

2.  The corporation is incorporated under the laws of the state of  Delaware

3.  The corporation received a certificate of authorization to transact business in South Carolina dated  8|30 /46

4.  The corporation is no longer transacting business in South Carolina.

5.  The corporation hereby surrenders its authority to transact business in the State of South Carolina.

6.  The corporation revokes the authority of its registered agent in South Carolina to accept service of process, and consents that process in any action, suit or proceeding based upon any cause of action arising in this State before the effective date of this application may be served on the Secretary of State.

7.  The address to which the Secretary of State may mail a copy of any process against the corporation that may be served on him is  c/o WestPoint Stevens Inc., P. O. Box 71, 507 West 10th Street, West Point GA 31833
    The corporation hereby agrees to notify the Secretary of State of any change in this mailing address.

8.  Unless a delayed date is specified, this application shall be effective upon acceptance for filing by the Secretary of State (See §§33-1-230(b):

DATE:  8/26/99

J.P. Stevens & Co., Inc.
(Name of Corporation)

By _____ (Signature)

Christopher N. Zodrow, Vice President & Secretary
(Type or Print Name and Office)

## FILING INSTRUCTIONS

1. Two copies of this application, the original and either a duplicate original or a conformed copy, must be filed.

2. Filing Fee (payable at the time of filing this document)  $10.00

Form Approved by South Carolina
Secretary of State  1/89

99-033916CC

# EXHIBIT B

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

## State of South Carolina
## Office of the Secretary of State
### The Honorable Mark Hammond



1205 PENDLETON STREET, SUITE 525
COLUMBIA, SC 29201

803-734-2170
sos.sc.gov

December 30, 2024

ELECTRONIC CERTIFIED MAIL
RETURN RECEIPT REQUESTED

J.P. Stevens & Co., Inc.
c/o WestPoint Stevens Inc.
P.O. Box 71, 507 West 10th Street
West Point, GA 31833

RE: J.P. Stevens & Co., Inc., 2024-CP-21-02844

Dear Madam/Sir:

In accordance with South Carolina Code § 33-15-200, we are enclosing herewith a copy of the Amended Summons; and First Amended Complaint in the above-entitled case. Service was accepted on December 23, 2024 and a copy has been duly filed in our office as of this date. The fee of $10.00 has been paid.

Yours very truly,

Allyson Green
South Carolina Secretary of State's Office

Enclosures

cc:   John B. White Jr., P.A.
      John B. White, Jr.
      291 South Pine Street P.O. Box 2465
      Spartanburg, SC 29304

| Corporations | UCC | Charities | Boards & Commissions | Notaries | Trademarks |
|---|---|---|---|---|---|
| 803-734-2158 | 803-734-2175 | 803-734-1790 | 803-734-2512 | 803-734-2512 | 803-734-0367 |

ELECTRONICALLY FILED - 2025 Jan 31 2:05 PM - FLORENCE - COMMON PLEAS - CASE#2024CP2102844

STATE OF SOUTH CAROLINA  )    IN THE COURT OF COMMON PLEAS
                            )
COUNTY OF FLORENCE  )    CASE NO: 2024-CP-21-02844
                            )
City of Florence, South Carolina,  )
                            )
       Plaintiff,  )    **AFFIDAVIT OF SERVICE**
                            )
vs.  )
                            )
Aladdin Manufacturing Corporation, )
et. al.,  )
                            )
       Defendants.  )
_____ )

      The undersigned, Debbie Brothers being duly sworn, says that she served the foregoing: **COVER LETTER, TWO AMENDED SUMMONS AND TWO AMENDED COMPLAINT** in the above captioned action upon the Defendant **J.P. STEVENS & CO., INC.,** by delivering the same to:

( ) the individual personally, or

(X) **ALLYSON GREEN, Program Coordinator for SC Secretary of State's Office** person served as authorized/designated to receive service for the defendant and leaving with him/her one (1) copy of the same at **1205 Pendleton Street, 5th Floor, Columbia, SC 29201** on the **23rd day of December, 2024, at 4:10 p.m.**

      The Affiant further says, that upon information and belief, she know the person so served to be the defendant mentioned and described in the documents served and that the affiant is not a party to nor interested in the action.

*Debbie Brothers*
_____
Debbie Brothers

SWORN TO before me this _27th_ day
of _December_ ,2024
_McArthur Lewis_
Notary Public for S.C.
My Commission Expires: 3-6-2025